## ROBERTS v. THE STATE.

1. Where in a murder case the dying declaration of a decedent was that the mortal wound was inflicted by the defendant without provocation, and where the defendant admitted the killing, but claimed it was accidental, and offered witnesses to prove this defense, whose testimony was conflicting and authorized inferences corroborative of the dying declaration, a verdict of guilty is not unauthorized.

2. Where homicide by misadventure is set up as a defense, in charging on that defense it is not error for the court to read Penal Code § 40: "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect."   It is altogether a different question whether the evidence authorized a charge on involuntary manslaughter; no exception having been taken to the court's omission in this respect.
NOVEMBER 13, 1912.

Indictment for murder.   Before Judge Rawlings.   Screven superior court.   August 6, 1912.

H. A. Boykin, for plaintiff in error.

T. S. Felder, attorney-general, Alfred Herrington, solicitor-general, and Hines & Jordan, contra.

EVANS, P. J. The defendant was convicted of murder, and life imprisonment in the penitentiary was recommended by the jury. He was a man of mature years; his exact age is not disclosed in the record, but it does appear that one of his witnesses was a grandson. The decedent was a youth. The father of the deceased and the defendant lived on the same plantation. The deceased was the owner of a cow, which had browsed in the fields of the defendant before he had finished gathering his matured crop. The decedent had gone to find his cow, and stopped at the house of the defendant, where he received the gunshot wound from which he died. The dying declarations of the decedent were that the shooting was unprovoked. The witnesses for the defendant, who were of his immediate family, testified that the gun was accidentally discharged while the defendant was playing with the deceased. There were some outcroppings in their testimony which threw suspicion on the verity of their narrative.

1. The point is made that a conviction can not be had on the evidence of the dying declarations of the decedent. This kind of evidence does not fall within the rule that hearsay evidence is without probative value. It is an exception to the rule of hearsay evidence, "founded in the necessity of the case; and for the reason that the sanction under which these declarations are made in view of impending death and judgment, when the last hope of life is extinct, and when the retributions of eternity are at hand, is of equal solemnity as that of statements made on oath." *Campbell* v. *State,* 11 *Ga.* 353, 374. The decedent is speaking through the mouths of others, and his dying declaration is receivable as evidence. Though dead, he is to be regarded as a witness at least to the extent that his declaration may be impeached by showing a contradictory statement made after he was wounded. *Battle* v. *State,* 74 *Ga.* 101. Except in cases of treason and perjury, and in cases of felony where the witness is an accomplice, a conviction may be had on the testimony of a single witness. Penal Code, § 1017. But the dying declaration of the decedent was not the only evidence that the homicide was wilful. There was conflict between the witnesses offered by the defendant to prove an accidental homicide, and their testimony afforded inferences tending to corroborate the dying statements of the deceased.

2. The court charged Penal Code § 40: "A person shall not

be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect." The objection made to this instruction was considered in *Allen* v. *State,* 134 *Ga.* 380 (67 S. E. 1038), and it was there ruled that it was not error to charge this code section in defining homicide by misfortune. It is a very different question whether the evidence authorized a charge on involuntary manslaughter. No complaint is made of the court's failure to charge on that grade of homicide, and therefore we can not rule upon the effect of any omission so to do.

*Judgment affirmed. All the Justices concur.*