## CURRY *v.* THE STATE.

Section 40 of the Penal Code, which provides that: "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears that there was no evil design, or intention, or culpable neglect," has no application to a case where the contention of the defendant, and the evidence introduced, raise only the defense of accidental killing of the deceased while the defendant was acting in self-defense in resisting a felonious assault upon him with a pistol.

　　　　　　　　No. 870. NOVEMBER 16, 1918.

Indictment for murder. Before Judge Bartlett. Paulding superior court. February 20, 1918.

*W. E. Spinks,* for plaintiff in error.

*Clifford Walker, attorney-general, J. R. Hutcheson, solicitor-general, C. D. McGregor,* and *M. C. Bennet,* contra.

HILL, J. The defendant was convicted of the murder of Will Burr, and brings before this court for review the judgment overruling his motion for new trial. The special assignments of error are as follows: (4) "Because upon the trial of said case the court charged the jury as follows: 'A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears that there was no evil design, or intention, or culpable neglect. Now if the killing in question, if any killing has been shown, of which you are the judges, was the result of accident, and there was no evil design on the part of the defendant (provided the defendant did the killing) or

culpable neglect on his part—in other words, that the killing, if any has been shown, was the result of misfortune or accident, you should acquit the defendant; that is, provided there was no evil design or intention or culpable neglect on the part of the defendant.' Which said charge movant insists was error for the following reasons: It in effect instructed the jury that if movant had been guilty of culpable neglect, that then they should find him guilty of murder irrespective of whether he intended to kill the deceased, whereas there can be no murder without an intent to kill." (5) "Because the court charged the jury as follows: 'The defendant, M. Curry, by his plea of not guilty sets up the defense of self-defense, and says that what he did on the occasion in question was done in self-defense, to defend himself from a felonious assault, but that the killing of Will Burr on the occasion in question was also an accident; that there was no evil design or intention or culpable neglect on the part of the defendant in killing Will Burr; and therefore he says he should not be convicted of the offense as charged by the indictment.' Which said charge movant insists was error for the following reasons: (*a*) because movant did not by his plea of not guilty set up the plea of self-defense; (*b*) because the effect of this charge was to tell the jury that if movant had failed to show that the killing was without design or intention or that he was without culpable neglect on his part, that then they should find him guilty of murder." (6) "Because the court failed to give in charge to the jury the law of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. This was error for the reason that the State's evidence, as well as the defendant's statement, raised the question of involuntary manslaughter, and the court should have given it in charge without any written request so to do."

According to the testimony, the fact that Will Burr had been killed was first made known by the defendant himself. The scene of the homicide was in the woods. The defendant came into town on the morning after it occurred and told one of the witnesses that he (the defendant) "and some other fellows" were down there playing cards and a strange negro came along in the night, and they won his money, and that Will and the negro got into a scuffle and the strange negro shot Will and ran off. Another witness testified to a similar statement made in his presence by the

defendant. The deputy sheriff, testified that early on the morning of the killing the defendant came to him and told him that the defendant and some more negroes were down there gambling, "and that a strange negro shot Will and took his money away from him," and that the defendant afterwards repeated the same story. On the next day, or the day following, the witness and Mr. Wheeler went to the jail and talked to the defendant, who then said that he (defendant) killed the deceased. "He said they were scuffling, and the pistol went off and shot him; . . he just said they got up some trouble about some money, and Will had got out his pistol and started towards him, and he grabbed him and the pistol, and they scuffled, and the pistol went off and killed him." The defendant on the trial made substantially the same statement, amplified with details, in which he claimed that during the game of cards he won a bet and when he went to pick up the money the deceased jumped up "and threw his pistol on him," and during another dispute the deceased threatened, "I will put as many holes in you as there are in a sieve." As to the immediate circumstances of the killing he said: "We both shuffled the cards and they fell, and when they fell he grabbed the money. When he grabbed the money I grabbed it first. I grabbed it out of his hand and he throwed a bottle at me, and it tipped me right here on the head (indicating) and bursted at the back of my head. He riz up and jerked his pistol on me, and the pistol snapped, and I grabbed it and throwed it off that way from me [indicating]. We got to scuffling over it, and I commenced holloing and told him not to shoot me. I say, 'Don't shoot me, Will; I would rather give you all the money than to have you shoot me that way.' When I said that he kept trying to work the trigger, and I turned the pistol again from me, and I got the pistol turned it around, and it fired. I turned it loose right then just as soon as it fired, and walked off across the branch and started to town." In addition to what has been stated, the main circumstances proved in the case were as follows: The deceased was found dead in the woods, his body lying at a place where a fire had been built, there being still some fire and ashes and wood at the spot. There was a bullet wound near his heart. His clothes were on fire, and his left hand and side were badly burned. He was left-handed. A pistol was lying by him, one witness testifying that it was stuck up in

36

the ground. Four of the cartridges in the pistol had been snapped on, and one chamber had been fired. An old empty pocket-book, partly burned, was lying near by. The wife of the deceased testified that the pistol looked like one he had; and that he had twenty-five or thirty dollars which he carried away with him on the Saturday night the homicide occurred.

According to the view we take of the evidence only two theories were presented, namely, whether the killing resulted from an accidental discharge of the pistol while the accused was resisting an effort of the deceased to commit upon the defendant a serious personal injury amounting to a felony, according to the contention of the accused; or whether it was a case of murder as contended by the State. The statement of the accused, if true, made out a case of accidental killing while he was endeavoring to prevent injury resulting to himself from a felonious attempt made by the deceased to commit a serious assault upon him amounting to a felony. The evidence for the State identifying the accused as the slayer was derived solely from the testimony of the deputy sheriff, who repeated an admission made to him by the accused that the homicide resulted from a "scuffle" over a pistol; but as a part of this admission the accused also stated that the deceased "had got out his pistol and started towards him, and he grabbed him and the pistol, and they scuffled, and the pistol went off and killed him." If this statement be the truth of the case, there would be no manslaughter involved. With these two theories, how stands the case with respect to a proper charge on the question of an accidental killing? Manifestly, if it be true that the defendant was endeavoring to prevent the deceased from slaying him, or committing upon him a serious personal injury amounting to a felony, he would have the right even to kill the deceased intentionally in order to prevent it. Having the right under such circumstances to kill his assailant, if necessary for his own protection, if in asserting his right of self-defense he attempted to wrest the pistol from his adversary or to turn it aside, in doing which it was accidentally discharged, certainly the defendant could not be charged with any degree of care with respect to the manner in which he handled the pistol. Furthermore, if there was no intent to kill, the law of killing in self-defense, in the ordinary sense in which that is understood, does not enter into the case, since that only applies where

the accused *intentionally* kills his assailant to protect his own life, or to prevent the commission upon him of a serious injury amounting to a felony. On the other hand, the right he would have under such circumstances intentionally to kill his assailant justifies whatever he may do in exercising his *right* of self-defense; and in the exercise of that right there can be no question of evil design, or intention, or culpable neglect, which could operate to make the accused guilty of a crime. So far as we are aware, the present case is somewhat of an anomaly, since we have been unable to find any case in our reports where, as here, the question of an unintentional or accidental killing was involved, in which it was contended that the accident happened under circumstances where the accused would have been justified in intentionally slaying his adversary. In all the other cases in our reports, so far as we have been able to discover, where the defense of accident or misfortune was asserted, there were proved circumstances under which some intermediate offense of a lesser grade than murder was involved. It must be the law that one can choose his own defense when charged with crime and rest his case upon it. One may not desire or attempt to kill another even though his life be in danger from an attack made upon him; and if he attempts to prevent the threatened injury without harming his assailant, but in so doing the latter is killed accidentally without any intention on the part of the former to injure him, surely in such a case, if one be charged with crime, he has the right to be acquitted on the ground that the killing was accidental, and does not have to invoke the law applicable to intentional killing in self-defense. In such a case, the *law* of self-defense, which deals with an *intentional* killing under circumstances of justification is not involved, but the *right* of self-defense is involved, and its exercise does not require any degree of care. We are of the opinion that section 40 of the Penal Code has no application to a case of this character, and that the court erred in restricting the right of the defendant to be acquitted on the ground that the homicide was an accident, by instructing the jury that he must have been free from evil design, or intention, or culpable neglect. Rather, in a case like the present, the court should simply instruct the jury that if they believe the killing occurred under the circumstances as contended by the defendant, that is, that the deceased, without sufficient provoca-

tion, was endeavoring to take the life of the defendant or to commit upon his person a serious injury amounting to a felony, or the circumstances were such as to justify the fears of a reasonable man that his life was in danger, and in attempting to avert the threatened injury the defendant grabbed the pistol with which the assault was being committed, and in the ensuing struggle it was accidentally discharged and the assailant was thus killed, the defendant would not be guilty of any offense and should be acquitted.

The question of error in the charge of the court as discussed and pointed out above is not in terms raised by the assignments of error quoted in the beginning of this opinion, but is necessarily involved in criticism (b) of the charge complained of in the fifth ground of the motion. As the case is returned for a new trial, we express no opinion as to the sufficiency of the evidence to support the verdict.      *Judgment reversed. All the Justices concur.*

ATKINSON, J., being of the opinion that the evidence required a charge on the law of involuntary manslaughter, concurs in the judgment of reversal.

GILBERT, J., concurring specially. 1. The verdict and judgment in this case should be set aside and a new trial granted, but this should be done on the ground that the evidence, as it appears in the record, does not authorize the verdict. The evidence presented by the State may be briefly summarized by saying that the corpus delicti was proved, and contradictory statements by the accused, the first statement being one made to a witness for the State to the effect that the deceased was killed by a strange negro, who had escaped; the second statement being, in effect, that the accused and the deceased were scuffling and the pistol went off and shot the deceased, and that he, in this manner did the killing. No presumption of malice can arise from this statement, because the accused exculpated himself in the same statement wherein he admitted the killing. This was not a confession of guilt. *Futch v. State,* 90 *Ga.* 472 (8), 480 (16 S. E. 102) ; *Owens v. State,* 120 *Ga.* 296, 299 (48 S. E. 21) ; *Perkins v. State,* 124 *Ga.* 6 (52 S. 17). The accused, in his statement on the trial, detailed circumstances making a clear case of homicide due to misfortune or accident, where there was no evil design, or intention, or culpable neglect. In this statement he said that the deceased was advancing upon him in anger with a pistol, snapping the pistol; where-

upon the accused grabbed it, and in the scuffle the deceased was killed by his own pistol in his own hand. Just a few minutes previously the deceased had threatened the life of the accused. If the statement is to be believed, the accused is entitled to an acquittal, because under the circumstances therein stated he was guilty of no penal offense whatever. Penal Code, § 40.

2. I can not agree with my associates in the opinion that the court committed reversible error in giving in charge to the jury, under the facts of the case, Penal Code, § 40 in its entirety. To make the defense of accident or misfortune available to one who has killed another, it must not only appear that the homicide was the result of misfortune or accident, but it must also appear that there was no evil design, or intention, or culpable neglect. *Wallace* v. *State,* 95 *Ga.* 470 (20 S. E. 250). It is true that the facts of one case are rarely duplicated in the facts of another case; and it is unusual, to say the least, when it is possible to find, among our reported cases, an adjudication upon exactly the same facts. It is by no means unusual, however, to find among the decisions of this court an approval of the trial court where the same section of the Penal Code has been given in charge in its entirety and error has been assigned thereon. *Roberts* v. *State,* 138 *Ga.* 815 (2), 816 (76 S. E. 361) ; *Jones* v. *State,* 140 *Ga.* 478 (79 S. E. 114). In the *Roberts* case the assignments of error are not reported in detail. From the original record it will be found that error was assigned because this entire section was given in charge, for the same reasons assigned in the instant case, and for a number of other reasons, all of which were adjudicated adversely to the plaintiff in error. Although one may not intend to kill another, if in fact he does kill him in such a manner as will imply an intention to kill, the law will declare the homicide to be done with malice aforethought, and consequently to be murder. Penal Code, § 67; *Pool* v. *State,* 87 *Ga.* 526 (13 S. E. 556) ; 1 Bishop's New Criminal Law, § 327. "Malice is evil intent, which in law does not necessarily mean hatred, ill will or malevolence, but consists in any unlawful act wilfully done without just excuse or legal occasion, to the injury of another person." 1 Wharton's Criminal Law (11th ed.), §§ 137, 146. Under our own decisions malice is implied where one kills another under circumstances which the law neither justifies nor in any sense mitigates. Therefore, to con-

stitute pure accident or misfortune, it is necessary that there should be no evil intent in a case of homicide. In the case before us no evil intent or culpable neglect appears, and it follows that the defendant is entitled to an acquittal, under section 40 of the Penal Code. Surely the court did not err in charging that section in its entirety. The charge suggested by the majority of this court in the opinion is founded on section 40, and on no other authority.