## RAWLS v. THE STATE.

1. The first ground of the amended motion is as follows: "The court charged the jury as follows, to wit: 'For if there should have been an interval between the assault or provocation given and the homicide, of which you in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and be punished as murder.'" It is contended that "this was error because it is argumentative and there was no evidence to authorize it." *Held*, that this charge was not error for any reason assigned. This excerpt from the charge constitutes an integral part, but not the whole of Penal Code § 65, defining voluntary manslaughter, all of which was given in charge. It is not claimed that the court erred in charging the law of voluntary manslaughter.

2. The second ground of the amended motion complains that "The court omitted, in its charge, to explain fully to the jury that while words, threats, menaces, and contemptuous gestures shall in no case be sufficient to reduce the crime from murder to manslaughter, yet such words, threats, menaces, and contemptuous gestures might be sufficient to free

the defendant from any crime at all, if he acted upon the fears of a reasonable man, so engendered by them, that a felony was about to be committed upon his person. This omission was error, because self-defense, under the fears of a reasonable man, required this explanation when the evidence showed the deceased was of a weight estimated at 187 to 240 pounds and the defendant 130 pounds, and the beginning of the difficulty was initiated with the statement of the deceased: 'I will take that gun away from you and beat hell out of you.' " *Held,* that the omission of which complaint is made was not error for any reason assigned. The court fully and fairly instructed the jury in regard to the law of voluntary manslaughter, as embodied in the Penal Code. The doctrine of reasonable fears has no connection with the offense of voluntary manslaughter. *Adkins* v. *State,* 137 *Ga.* 81 (72 S. E. 897), —a case in which the defendant, in his statement, claimed that the homicide was accidental; *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573); *White* v. *State,* 147 *Ga.* 377 (4), 381 (94 S. E. 222). Compare *Vernon* v. *State,* 146 *Ga.* 709, 714 (92 S. E. 76).

3. The court did not err in failing to charge the law of involuntary manslaughter.

4-6. The fourth and sixth grounds of the amended motion complain of excerpts from the charge of the court on the subject of admissions by silence. These grounds of the motion are not meritorious.

5. The fifth ground of the amended motion assigns error on the admission of the following evidence: "Q. She [referring to Mrs. A. L. Poindexter, wife of deceased] followed him? A. And she said, 'You shot him when he was down, and you will pay for it with your life.' Q. About how long after the firing of the second shot that she made this remark? A. I would estimate four or five seconds. Q. She said, 'You shot him when he was down, and you will pay for it with your life'? A. Yes. The court: Did the prisoner make any reply? A. Not to my knowledge." The objections to this evidence were: (a) What Mrs. Poindexter said was after the homicide was over. (b) It was hearsay. (c) It had no probative value, and was immaterial. *Held,* that the evidence was not inadmissible for any of the reasons stated in the three grounds of objection. Penal Code, § 1029; *Nunn* v. *State,* 143 *Ga.* 451, 454 (85 S. E. 346); *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713).

7. Another ground of the motion complains that the court charged the jury as follows: "If Poindexter was killed by the defendant, Rawls, under the circumstances contended by Rawls; that is, that Poindexter, without sufficient provocation, was endeavoring to take the life of Rawls, or to commit upon his person a serious personal injury, amounting to a felony, and that Rawls, in attempting to avert the threatened injury, under such circumstances engaged in a struggle over a pistol which was accidentally discharged, and that Poindexter was thus killed, Rawls would not be guilty, and it would be your duty to return a verdict of not guilty, provided, it satisfactorily appears to you that there was no evil design, or intention, or culpable neglect on the part of the prisoner." The criticism is that "This was error, because it placed upon the defendant a greater burden than the law imposes. It was not necessary to this defense that it satisfactorily appear that there

was no evil design, or intention, or culpable neglect on the part of the prisoner, as these elements were not involved." *Held*, that this charge was not error.

8. The eighth ground of the amended motion complains that the court refused to give the following charge to the jury, though duly requested in writing: "I charge you in this case that if A. Lamar Poindexter was killed by the defendant, Bernard H. Rawls, under the circumstances as contended by Rawls; that is, that Poindexter, without sufficient provocation, was endeavoring to take the life of Bernard H. Rawls, or to commit upon his person a serious injury amounting to a felony, or the circumstances were such as to justify the fears of a reasonable man that his (Rawls') life was in danger, or that Poindexter was attempting to commit upon Rawls a serious personal injury amounting to a felony, and Rawls, in attempting to avert the threatened injury under such circumstances, and you find that a struggle ensued over a pistol which was accidentally discharged and that the deceased, A. Lamar Poindexter, was thus killed, the defendant would not be guilty of any offense under the law and it would be your duty to acquit him and to return a verdict of not guilty." It is insisted that it was error to refuse this request, "because the evidence justified and demanded it." *Held:* In view of the instructions on that subject actually given to the jury, this ground of the motion does not show error. The court charged the jury on all of the subjects embraced in the written request, but at the end of the instruction on the subject of homicide by accident, applying the principles of Penal Code § 40 to the concrete facts of the case, added the following: "Provided it satisfactorily appears that there was no evil design or intention or culpable neglect on the part of the prisoner." Thus it will be seen that this ground of the motion presented the same question with which we have dealt in the seventh headnote.

9. The verdict is supported by evidence.

No. 4669. June 24, 1925.

Murder. Before Judge Meldrim. Chatham superior court. November 26, 1924.

*R. Earl Camp, A. B. Lovett,* and *A. A. Lawrence,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

Hill, J. 1, 2. The first and second headnotes do not require elaboration.

3. The third ground of the motion complains that the court erred in failing to charge the law of involuntary manslaughter. An examination shows that the law of involuntary manslaughter was not involved under the evidence either for the State or the accused. *Golatt* v. *State,* 130 *Ga.* 18 (60 S. E. 107); *Drane* v.

*State,* 147 *Ga.* 212 (2) (93 S. E. 217). Movant insists that under
the evidence of Frank E. Shumate involuntary manslaughter was
involved; and this evidence is quoted in the brief of counsel as
follows: "As I was going down the hall, I looked into the soda-
water stand, or cigar stand, and I saw two men in some sort of
a struggle. My first impression was that they were scuffling—had
no idea of a fight, and I took another step or two, and the pistol
fired. At the time the second shot was fired Mr. Poindexter was
with his back towards the end of the soda fountain, and Mr. Rawls
was with his back towards the cigar stand. They were in contact.
I don't know in what way, but they were in contact; they appeared
to be struggling. Mr. Poindexter was not lying on the floor when
the second shot was fired. I am sure of that. He fell after the
second shot was fired. The struggle began along the soda-water
counter, and his left elbow touched the rear corner of the soda-
water stand, and he fell on his back with his head between the
counter and his feet towards the cigar stand." We see nothing
in this evidence to require the charge as contended. While the
witness speaks of a "struggle" and of a "scuffle," these terms alone
do not necessarily mean that the participants in the rencounter
were scuffling or struggling over a pistol. Mrs. Poindexter, a wit-
ness for the State, testified: "I got to the door when the first
shot was fired. . . I saw Mr. Poindexter grab Mr. Rawls'
hand—he pulled his gun out of his right-hand pocket. The pistol
was not exposed. Mr. Rawls reached into his pocket. Mr. Poin-
dexter grabbed it after it was out; he grabbed his wrist, I could
not say on which hand. Mr. Poindexter held it, and Mr. Rawls
pulled it, and it fired directly past him, in the floor; and it
made a graze. Mr. Poindexter had him by the right wrist. Mr.
Poindexter, whether he was hurt or what, slipped. We have a
leak in the fountain, and there was water on the floor which made
it slippery. It was about a minute after the first discharge of
the pistol that Mr. Poindexter slipped. They were tussling, and
Mr. Poindexter was trying to hold his hand up, and he slipped and
went back against the fountain, put his hand back this way [in-
dicating] and went to the floor, still having his grasp on his
wrist. Mr. Rawls shot him on the floor, the pistol being held
right at his body." On cross-examination she testified: "When
Mr. Poindexter started slipping, I knew he was gone, and I tried

to grab Mr. Rawls, and he shook me loose, and leaned over and pulled the trigger." This evidence does not make a case of involuntary manslaughter. It makes a clear case of an effort by the accused to shoot the deceased, and an ineffectual effort on the part of the deceased to prevent the shooting. Taking this evidence as the truth of the case, it would appear that there was a struggle between the parties, the deceased attempting to shove the pistol away from his own body, the result of which was that the deceased finally slipped to the floor, and then the accused deliberately and intentionally shot him. The defendant, in his statement, it is true, does relate circumstances which would perhaps have authorized a charge on involuntary manslaughter; but the court is not required, where there is no written request therefor, to frame a charge on facts stated alone in the statement of the accused. *Hunter* v. *State,* 133 *Ga.* 78 (6) (65 S. E. 154); *Hawkins* v. *State,* 141 *Ga.* 212 (80 S. E. 711). The cases relied upon by movant for his contention in this connection are all cases where the facts requiring the charge did not depend alone on the statement of the accused, and in one case the charge was duly requested in writing.

4, 6. The court charged the jury, in part, as follows: "It is contended, among other things, on the part of the State, that there was an incriminating admission made by the prisoner, arising out of acquiescence which silence is supposed to give. You look and see whether or not any statement was made in the hearing of the prisoner. If it were not made, you give no heed to it. If it were made, you will determine, under all the facts and circumstances under the evidence, whether or not the prisoner heard it. If he did not hear it, you will give no heed to it. If he did hear it, then determine whether or not he had the opportunity, at that time, to deny the statement alleged to have been made, and you will determine further whether or not, at that time, and under these circumstances, he was under any duty to break the silence and to make a denial. If you find that these conditions existed, then you can consider the alleged admission, arising out of the alleged silence, along with all the other facts and circumstances in the case; but if you determine that any incriminating admission was made by him, you will receive that admission with great care." It is complained in the sixth ground of the motion that the court

erred in giving this charge, because: (a) it was argumentative; (b) it was irrelevant and prejudicial to movant; (c) it was without evidence to support it. We can see no basis for the contention that the charge was argumentative. We do not think it was either irrelevant or prejudicial to the accused. It was not without evidence to support it, as is shown by the evidence quoted in the fifth headnote. In the fourth ground of the amended motion for new trial complaint is made of that part of the foregoing charge as follows: "If he did hear it, then determine whether or not he had the opportunity, at that time, to deny the statement alleged to have been made, and you will determine further whether or not, at that time and under these circumstances, he was under any duty to break the silence and to make a denial. If you find that these conditions existed, then you can consider the alleged admission, arising out of the alleged silence, along with all the other facts and circumstances in the case; but if you determine that any incriminating admission was made by him, you will receive that admission with great care." It will be observed that the exception in the fourth ground is to a portion of the charge excepted to in the sixth ground. There is nothing in the language employed by the court which would authorize the criticism that the admission was given a higher probative value than is given to it by the law. The criticism of the charge states that the statute requires the admission to be "scanned with care." The court instructed the jury to receive the admission "with great care." We do not think it can be said that the statute throws a greater safeguard against such evidence than was done by the court on the subject of an admission by silence. We do not deem it necessary to discuss these criticisms in detail. We think it is sufficient to say that the charge was not erroneous for any reason assigned.

5. The fifth headnote does not require elaboration.

7. One ground of the motion for new trial complains that the court gave in charge to the jury the following: "If Poindexter was killed by the defendant, Rawls, under the circumstances contended by Rawls, that is, that Poindexter, without sufficient provocation, was endeavoring to take the life of Rawls, or to commit upon his person a serious personal injury, amounting to a felony, and that Rawls, in attempting to avert the threatened injury, under such circumstances engaged in a struggle over a pistol

which was accidentally discharged, and that Poindexter was thus killed, Rawls would not be guilty, and it would be your duty to return a verdict of not guilty; provided it satisfactorily appears to you that there was no evil design, or intention, or culpable neglect on the part of the prisoner." The criticism is that "this was error, because it placed upon the defendant a greater burden than the law imposes. It was not necessary to his defense that it satisfactorily appear that there was no evil design, or intention, or culpable neglect on the part of the prisoner, as these elements were not involved." Under former rulings of this court it was not error, for any reason assigned, for the court to charge Penal Code § 40 in its entirety. In the case of *Allen* v. *State,* 134 *Ga.* 380 (67 S. E. 1038), this court passed upon the identical question. Allen had been convicted of murder, and his motion for a new trial had been overruled, and a writ of error sued out. One ground of his motion complained that the court read to the jury Penal Code § 40 in its entirety. Presiding Justice Evans, speaking the unanimous opinion of this court, said: "The error of the instruction is alleged to consist in this: Inasmuch as the court only instructed the jury on the law of murder and accidental homicide, he should have eliminated any reference to killing resulting from culpable neglect, as a homicide caused by neglect is neither murder nor excusable as an accident, and therefore the charge was misleading. We do not appreciate the force of this criticism. A homicide by misadventure, where the law absolves the slayer and holds him guiltless of crime, must not only exclude any evil design or intention on the slayer's part, but must also show an absence of culpable neglect." This ruling was followed in the case of *Roberts* v. *State,* 138 *Ga.* 815 (2) (76 S. E. 361). In the *Roberts* case, which was also a decision concurred in by all of the Justices of the court, the assignments of error are not reported in detail. The original record of file in this court shows that the complaint was substantially the same as that in the *Allen* case. That is, error was assigned because the entire section was given in charge, including reference to culpable neglect. The *Allen* case was cited and followed. In *Jones* v. *State,* 140 *Ga.* 478 (79 S. E. 114), the assignment of error was substantially the same as in the *Allen* and *Roberts* cases. The court instructed the jury in the language of Penal Code § 40, except that instead of

the term "culpable neglect" the court used the words "criminal negligence." The judgment was affirmed, all the Justices con- curring. The above decisions of this court are cited by the trial judge in an opinion written by him in connection with the judg- ment overruling the motion for a new trial. He further says: "We find the case of *Wallace* v. *State,* 95 *Ga.* 470 (20 S. E. 250), was one of assault with intent to murder. A defendant can not be convicted of assault with intent to murder unless, if death re- sults, the offense would have been murder. It is difficult to understand how there can be any difference in the application of the doctrine of accident to murder and to assault with intent to murder. In the *Wallace* case the trial judge charged the whole of section 40, including of course the proviso. This charge was assigned as error. The Supreme Court held that the charge was legal and pertinent." We agree with the trial judge that it was not error to charge the jury the provisions of Penal Code § 40 in its entirety. Plaintiff in error cites the case of *Curry* v. *State,* 148 *Ga.* 559 (97 S. E. 529), as authority for the contention that this ground of the motion requires the grant of a new trial. The two cases differ in their facts. In the *Curry* case the deceased advanced upon the accused with a pistol. Under the evidence the accused was without fault. In the present case the accused had the pistol when the altercation took place.

8, 9. The eighth and ninth headnotes do not require elabora- tion. *Judgment affirmed. All the Justices concur, except* Russell, C. J., and Atkinson, J., who dissent from the rul- ing announced in the third division of the opinion, relating to the omission to charge the law of involuntary manslaughter; and *Gilbert, J., absent for providential cause.*