## KEITH v. THE STATE.

386

*F. W. Copeland,* for plaintiff in error.

*George M. Napier, attorney-general, M. Neil Andrews, solicitor-general, T. R. Gress, assistant attorney-general,* and *Dean Owens,* contra.

HILL, J.   Leonard Keith was indicted for the offense of murder. The indictment charged that he did kill and murder Bunn Green by striking him on the head with a piece of iron, from which wound he died.   The defendant was convicted, with a recommendation by the jury to mercy, and was sentenced to the penitentiary for life.   He made a motion for new trial, which was overruled, and he excepted.

From the testimony of Lain Crumpleton it appears that he and the defendant went to Rome on July 4, for the purpose of buying groceries for Crumpleton.   Upon arrival at Rome they met the deceased, who seemed to be drunk, and after a short conversation with Green the defendant said, "Let's go and get some whisky—liquor."   The three went in the automobile to a spot on the Radio Springs road; they got out of the car and walked up a trail leading up a hollow.   Crumpleton saw the deceased with a knife in his hand, and told the defendant of it.   The deceased and the defendant walked ahead of Crumpleton; defendant came back and asked Crumpleton if he should hit the deceased.   The defendant had some object in his hand, which was the crank-handle of the automobile. A few minutes later the witness Crumpleton said he heard two licks, and Keith came running back.   They went back to the car and drove to the home of the defendant.   Crumpleton was a farm-hand on the farm of the father of defendant, and he moved with his family the next night to Tennessee.   The physician who treated the deceased testified that the deceased lived two days after being struck, that meningitis was the immediate cause of his death, and that the

wounds were the primary cause. Andrew Baxter testified that while the defendant and Crumpleton were in Rome the witness asked defendant if he would take him home in the automobile, which the defendant consented to do. They walked down to the carnival where the defendant met up with Green, and witness heard the defendant say "something about taking his money and knocking him in the head and taking his money." They walked down to the car, and defendant, deceased, and Crumpleton drove off. The witness Baxter did not go with them. The body of Green was discovered by a fisherman who stated that he was sitting up, semiconscious, an open knife was by his side, and a pool of blood a short distance from where he was sitting. Roy Floyd, a policeman, was called. He testified that the deceased stated to him that "he came down there with some boys to get some whisky down there, and they told him they had some whisky down there, . . and he says, 'They got me. Mr. Floyd they got me,' and I says, 'Who hit you?' and he says, 'I don't know,' two men hit me. They brought me out here, told me they had gone to get a drink of liquor.' Something to that effect."

A witness for the State testified that he was driving to Rome on the night of July 4, and saw the defendant and Crumpleton standing on the bridge on the road near the scene of the crime, and that an automobile was on the opposite side of the bridge. The sheriff testified that the defendant made several statements to him with reference to the crime and told conflicting stories; one, that he got lost from Crumpleton and drove toward home and picked up Crumpleton a short distance from town, and they drove on home, and that he knew nothing of the crime. Another story he told was that Crumpleton picked up Green, and they drove out from Rome; that Crumpleton and Green got to quarreling, and Crumpleton hit him on the head with the crank-handle and dragged him off up the hollow. The later statements implicated Crumpleton as the perpetrator of the crime. A sister of the defendant and another witness, a man working for the father of the defendant, testified that the morning after the crime Crumpleton came to the house and told the defendant not to tell of the occurrence the night before; if he did, that he would get him, like he did the other man. A physician testified that the defendant was not morally responsible for his conduct, that a spell of fever a few years previous had af-

fected his mind, and that he was easily influenced by others. According to the statement of the defendant, he and Crumpleton went to Rome and met Baxter, who asked the defendant to take a friend of his to ride, in order to sober him up; that they got in the car and drove out to Shorter Lake; that Crumpleton and Green, the deceased, got to quarreling about a bottle of whisky, when the deceased pulled out a knife and cut at Crumpleton two or three times; that a little later the quarrel was renewed, when the deceased undertook to cut Crumpleton with the knife, whereupon Crumpleton struck him on the head with the crank-handle; that defendant left them scuffling in the road, and drove off a short distance, when he decided to go back and see the result of the fight. He hollered a few times, and got no response, when he drove off towards his home; and after going a mile and a half he overtook Crumpleton and carried him home.

The evidence was sufficient to authorize the jury to find the defendant guilty.

■ There is only one special ground in the motion for new trial, which assigns error on the following charge of the court: "Dying declarations, when the jury is satisfied they are such, are founded on the necessity of the case, and the reason that being made in view of impending death and judgment, when the hope of life is extinct, and when the retributions of eternity are at hand, stand on the same plane of solemnity as statements under oath." The assignment of error is that the charge "is and was erroneous because it gave undue emphasis to the evidence, the weight of which should have been left entirely and exclusively to the jury." As early as the case of *Campbell* v. *State*, 11 *Ga.* 353, in deciding upon the admissibility of dying declarations in evidence, this court held they were admissible, and used similar language to that quoted above. This language was quoted in *Roberts* v. *State*, 138 *Ga.* 815, 816 (76 S. E. 361) ; and also in *Mitchell* v. *State*, 71 *Ga.* 128 (2). In addition to the excerpt quoted, the judge instructed the jury, in immediate connection with the above: "I charge you that the court has permitted to go to you certain alleged statements of the deceased, explaining to you at the time the terms and conditions on which the same were permitted to so go to you. I charge you, in the first instance, that it is for the court to determine whether the preliminary proof is sufficient to admit dying declarations; but this ruling is not bind-

ing upon you, for you must be satisfied beyond a reasonable doubt that such statement was actually made by the deceased, and that he was in the article of death and conscious of his condition at the time of making such declarations." The court also quoted the code section on the subject of dying declarations. "It is not necessary that the person whose statements it is sought to introduce should express himself as believing that he is in a dying condition. Consciousness of his condition may be inferred from the nature of his wound or from other circumstances. Statements of the deceased in conflict with proved dying declarations, if any have been made, are also admissible; and, after all, those statements, which the de-defendant contends are in conflict with the dying declarations, are to be considered by the jury and given such weight as you think proper." Then, after the quotation complained of, the court charged: "The credibility of the alleged dying declarations is to be determined by the same rules that I have given you in charge with respect to determining any other evidence." The charge as given, but not set out in the ground of the motion for new trial, does in words leave the weight of the dying declarations entirely and exclusively to the jury, and the charge is not open to the criticism that it gave undue emphasis to the evidence. See *Fitzpatrick* v. *State,* 149 *Ga.* 75, 79 (99 S. E. 128), and cit.

It was not error to overrule the motion for new trial. *McArthur* v. *State,* 120 *Ga.* 195 (47 S. E. 553); *Strickland* v. *State,* 167 *Ga.* 452 (145 S. E. 879).

*Judgment affirmed. All the Justices concur.*