### 31856.  HARDY *v.* STATE.

DECIDED FEBRUARY 16, 1948.

490

*James R. Venable, Frank A. Bowers, H. C. Morgan,* for plaintiff in error.

*Roy Leathers, Solicitor-General,* contra.

TOWNSEND, J. (After stating the foregoing facts.) In the statement of the case in the brief of counsel for the plaintiff in error the following appears: "The evidence for the State was to the effect that the defendant shot deceased without sufficient provocation and not in self-defense, but because he became incensed at the deceased when some of the negroes in the quarter said something to him as he passed through the section quarters on the way to his house, and that when defendant came back on his way to Stone Mountain, he shot Gilliam, after having a few words with him, and without Gilliam making any attack or assault upon him." In view of this statement, and in view of the fact that counsel for the plaintiff in error does not argue in his brief in support of the general grounds of the motion for new trial, they are treated as abandoned. Special grounds 5 and 6 are expressly abandoned. Special ground 9 is treated as abandoned by reason of the failure of the plaintiff in error to advance arguments in support thereof in his brief. Special grounds 7 and 8, as hereinbefore pointed out, complain that the solicitor-general, over timely objection of the defendant's counsel, was allowed to ask a witness for the defendant, on cross-examination, whether or not the witness had ever had a case in court in DeKalb County and what was the nature of the defendant's business, the court having overruled these objections and permitted the solicitor-general to ask the witness if he had had a case there and also to ask the witness, "What's Fat's business?" In the latter instance the ground of the motion fails to reveal the answer. In the former-instance the answer of the witness in response to the ques-

tion, "Have you ever had a case here in court?" was "Yes, sir." Under the particular facts of the case, we do not believe that this evidence was sufficiently harmful to require a new trial, and no authorities in support of this ground of the amended motion for new trial are cited in the brief of counsel for the plaintiff in error.

This brings us to a consideration of special ground 4, which is predicated upon the ruling of the trial court in permitting, over objection, testimony on behalf of the State in support of a dying declaration alleged to have been made by the deceased. The testimony complained of is that of Johnnie Jones, a criminal investigator for DeKalb County out of the office of the solicitor-general. Over the objection of counsel for the defendant, this witness was permitted to testify as follows: "I had occasion to go to the hospital to see this boy, Bennie Gilliam, who is now deceased, at the time they said he was shot, I saw him twice. The last time I saw him was about two days before he died. He was not able to talk to me." The witness testified further that Gilliam's bandages indicated that he had been shot just below his throat, but the witness could not say whether one or more times, as he did not see the wound. "From the questions I asked and the answers he gave by signs, he appeared to be conscious. He would nod his head both ways in answer to my questions. . . I said 'Bennie, in the event you do not get well, I want to know what happened down there at the time you were shot;' then I said, 'Did you do anything to the man that shot you?' and he shook his head. I said 'Did you have a pistol or knife or any other kind of weapon with you at the time?' and he shook his head, and I said 'Did you do anything to the man to give him any reason for shooting you?' and he shook his head."

In an effort to apply the law of this State controlling the admissibility of evidence of dying declarations to the foregoing quoted evidence in this case, we have made a thorough study of all the decisions cited in the briefs of counsel for both parties hereto, as well as many other cases.

Section 38-307 of the Code provides as follows: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide."

In the instant case, the exact nature of the wound, whether one or more, which caused the death of the deceased is not disclosed by the evidence, except that he died a week or 10 days following the infliction thereof, that it was near his throat, and that he could not speak. Therefore, it can not be said that the deceased was conscious of the fact that he was in the article of death from the nature of his wound. There is no evidence in the record that indicates that he at anytime discussed by sign language or otherwise his chance of recovery, or the lack thereof. There is no evidence that any doctor, nurse, or other person ever informed the deceased that he was likely to die from his wound. The only suggestion along this line was from the testimony of the witness Jones, in which he told the deceased that he wanted to know what happened down there at the time the deceased was shot, in the event the deceased did not get well. In order to render the evidence of a dying declaration admissible, it must affirmatively appear that the declarant is conscious of the fact that he is in the article of death. This fact may be inferred from statements which the declarant makes to others, from statements others make to the declarant, from the nature of the wound, or a combination of these and other circumstances. In the instant case, there being no evidence that the declarant made any statement to others regarding his condition, or that others made any statement to him regarding the same—the evidence regarding the nature of his wound being such as not to indicate what his condition might have been two days before his death, and there being no other circumstances from which this inference might be drawn—we are of the opinion that the evidence does not measure up to the standard required by our law for dying declarations. *Mitchell* v. *State,* 71 *Ga.* 128, 143, is probably the leading case in this State on the subject of admissibility of dying declarations. In that case Mr. Justice Samuel Hall quotes from Coleridge, Judge, in R. *v.* Spilsbury, 7 C. & P. 187, as follows: "It is an extremely painful matter for me to decide upon; but when I consider that this species of proof is an anomaly, and contrary to all the rules of evidence, and that if received it would have the greatest weight with the jury, I think I ought not to receive the evidence, unless I feel fully convinced that the deceased was in such a state as to render the evidence clearly admissible. It appears from the evi-

dence that the deceased said he thought he should not recover, as he was very ill. Now, people often make use of expressions of that kind who have no conviction that their death is near approaching. If the deceased in this case had felt that his end was drawing very near, and that he had no hope of recovering, I should expect him to be saying something of his affairs, and of who was to have his property, or giving some directions as to his funeral, or as to where he would be buried, or that he would have used expressions to his widow purporting that they were soon to be separated by death, or that he would have taken leave of his friends and relations in a way that showed he was convinced that his death was at hand. As nothing of this sort appears, I think there was not sufficient proof that he was without any hope of recovery, and that I, therefore, ought to reject the evidence."

It will be noted that the case at bar, like the *Mitchell* case, supra, falls short of the least of these requirements, as in the case at bar there were no circumstances such as those quoted from which the inference could be drawn that the declarant was conscious of the fact that he was in the article of death. The *Mitchell* case, although falling short of the requirements of the law, was stronger than the instant case, for in the *Mitchell* case there was testimony that "He, deceased, asked me to place his hand upon his wound and explain the nature of it, and I did so, and he told me that wound would kill him. I tried to assure him that it would not, and he shook his head and looked off from me." In the instant case, there is no such evidence, nor can we find a case where a dying declaration was admitted on evidence as weak as that here. As was pointed out in the *Mitchell* case, evidence of a dying declaration should be received with great caution because, first, the declarant is not under oath, second, because he is not subject to cross-examination, third, because of the likelihood of its being misquoted, and fourth, because, although it is of a species of proof spoken of as an anomaly and contrary to all the general rules of evidence, yet it has, where received, the greatest weight with juries. In *Howard* v. *State*, 144 *Ga.* 169 (86 S. E. 540), it is held to be error, on the trial of one accused of murder, to allow a witness to testify that he called another, who asked the person shot if he was going to die, and he said that he was if they didn't do something for him, and the

witness then said, "You are going to die and who is it that shot you?" and the person replied, "Hack Howard" (the defendant), and we went out and he died pretty soon after that; he did not remember how long. The admission of dying declarations is an exception to the rule against hearsay evidence, founded on the necessity of the case. See *Roberts* v. *State*, 138 *Ga.* 815 (76 S. E. 361). There being ample evidence in the record to support the contentions of the State, the necessity for the dying declarations in the instant case was not absolute. In such case the doubt as to their admissibility should be resolved more against it than where the only evidence of the State, of necessity, is the dying declaration. In view of these authorities, we conclude that the trial court erred in overruling ground 4 of the amended motion for new trial.

*Judgment reversed. MacIntyre, P. J., and Gardner, J., concur.*