37594.   AARON *v.* THE STATE.

DECIDED MARCH 11, 1959—REHEARING DENIED MARCH 27, 1959.

*John S. Wood, William Butt, Herman J. Spence,* for plaintiff in error.

*Sam P. Burtz, Solicitor-General,* contra.

TOWNSEND, Judge. ■ The wife of the deceased, who was the only witness for the State present at the time of the occurrence, testified in substance that she and her husband stopped to visit a cousin at his camp, and during the afternoon met the Aarons and various other people; that she did not drink and her husband

had only a small drink, and that the Aarons consumed a considerable amount of whisky; that during the evening she and her husband, the cousin, the Aarons and their children drove in two automobiles to the Aaron home; that they played music, danced, and sang and everybody had a good time; that there was no unpleasantness whatever; that just as they were leaving she noticed her husband appear startled by something the defendant had said to him and reply, "Man, you can't mean that", and the defendant said: "If you don't think I mean it you come in here and I will show you my magnum." The men went into a bedroom. About five minutes later a single shot was fired; the witness was the first to enter the room and found her husband lying mortally wounded on the floor and the defendant bending over him with a Smith & Wesson 357 Magnum pistol in his hand, bearing on it the defendant's initials. A daughter of the defendant testified for him that she was the first to enter the room, and saw the wounded man on his hands and knees, and saw her father pick up the pistol from the floor where it was lying. There was expert testimony as to a parafine test conducted for powder burns on both the defendant and deceased, the results of which, according to the witness, showed nitrate particles on both sides of the defendant's right hand, one spot on the left hand, and a spot on the left arm showing, in addition, the presence of heat. There also appeared a high concentration of nitrate on the palms of both of the deceased's hands as well as the back of the left hand, and also powder particles on the shirt, the pattern of which was sufficiently broken to indicate that the shot had been fired at a distance of more than 24 inches from the chest.

The defendant in his statement said that he followed the decedent into a bedroom and told him he did not appreciate cursing in front of his wife; that the decedent replied he didn't like the way the defendant acted in front of his wife either; that Perkins then ran over and seized the pistol, which was hanging on the wall in a holster and pointed it; that the defendant attempted to take the weapon away from him and in the ensuing scuffle it was accidentally fired.

Counsel for the plaintiff in error contends that the evidence demands a finding of murder or of death by misadventure. While

the evidence as to provocation in this case is remarkable only by its absence, there is yet some evidence, both from the State and the defendant, that a sudden quarrel arose after an afternoon and evening of amicable relationship between two men who until that day had been total strangers to each other. There is some evidence of a struggle, as shown by a mark on the defendant's arm as well as his statement to this effect. The deceased had, earlier in the evening, examined some swords on the wall in another room, but there is evidence that he had not entered the bedroom in question until less than five minutes before he was shot, and would not therefore be presumed to have previously known of the exact location of the pistol hanging on the wall in that room. Such evidence by no means demands a finding of that premeditation and malice on the part of the defendant which is necessary to convict of the offense of murder, nor, on the other hand, does it demand a finding that the defendant actually discharged the pistol without any intention to do so. The evidence as a whole is consistent with a finding that the parties engaged in mutual combat, and that the defendant shot as the result of a sudden heat of passion. It was accordingly not error to give the jury in charge the theory of voluntary manslaughter, and the verdict is not without evidence to support it. *Francis* v. *State*, 71 *Ga. App.* 43 (29 S. E. 2d 918); *Drane* v. *State*, 147 *Ga.* 212(1) (93 S. E. 217); *Weaver* v. *State*, 189 *Ga.* 339 (5 S. E. 2d 872); *Morris* v. *State*, 176 *Ga.* 243 (167 S. E. 509).

■ Special ground 5 assigns error on the court's charge on the theory of justifiable homicide as a defense for the reason that it is contended that the defendant did not rely on justification but on the defense of accident and misfortune. As to the latter defense, the court charged: "Now, gentlemen, the defendant contends that the death of the deceased was the result of an accident or a misfortune, and that he is not guilty of any offense. If you should find from the evidence and the defendant's statement that this is the truth of the case it would be your duty to acquit the defendant. . . If the facts in evidence and the defendant's statement, and all reasonable deductions therefrom, present two theories, one of guilt of the defendant of murder, and one of accident, the justice and humanity of the law com-

pel the acceptance of the theory which is consistent with his innocence, that is, that the deceased came to his death as the result of accident or misfortune, and I charge you further that if you have any doubt as to whether or not his death resulted from an intentional killing on the part of the defendant or whether such death resulted from accident or misfortune, it would be your duty to give the defendant the benefit of that doubt and acquit him." Where, as here, the court charged fully as to the defense upon which the accused bases his case, the judgment will not be reversed because the court also gave the defendant the benefit of an additional defense to which he contends he is not entitled. *Maner* v. *State,* 91 *Ga. App.* 841 (2) (87 S. E. 2d 241). Nothing to the contrary is held in *Curry* v. *State,* 148 *Ga.* 559 (97 S.E. 529). It was there pointed out that, under circumstances remarkably similar to those shown in the case before us, justifiable homicide would be a defense provided the killing was intentional; that where the defendant relied on the defense of accident and misfortune under such circumstances it was error to limit such defense to circumstances where "there is no evil design, or intention, or culpable neglect" because, the defendant having an absolute right of self-defense, even to intentionally taking the life of another if it was necessary to save his own, the fact that he did not exercise such right *intentionally* did not limit its existence, and the charge on accident was, under the circumstances of the case, too circumscribed. The charge here is not subject to this defect, and this special ground is without merit.

■ Ground 6 assigns error on the following instruction; "Now, gentlemen, in this case the defendant insists that what he did on the occasion in question was to prevent the deceased from committing a felony upon him." This charge is not tantamount to an expression of opinion on the part of the trial court that the defendant admitted shooting the deceased, as is contended by the plaintiff in error, and as was the case in *Garland* v. *State,* 124 *Ga.* 832 (53 S.E. 314), and *Leary* v. *State,* 187 *Ga.* 445 (200 S. E. 779). The defendant did contend that what he did was to attempt to wrest the pistol away from the deceased, and that this was done to prevent a felony being committed

upon him, and that in the course of the struggle his antagonist was shot. There was, accordingly, no misstatement of the contentions of the defendant, and this ground also is without merit.

The trial court did not err in denying the motion for new trial as amended.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*