Butler vs. The State.

## BUTLER VS. THE STATE.

1. INDICTMENT:  *For " Felony."*

To accuse one of the crime of *felony* is a bad Code beginning to an indictment. *Felony* is the name of no particular crime, but designates a *class* of crimes.

The words " no considerable provocation appearing," are proper in an indictment for an aggravated assault, but are unnecessary and inappropriate in an indictment for an assault with intent to kill, and may be treated as surplussage.

2. WITNESS:  *His prejudice may be shown, but not the reasons for it.*

A witness for the state may be shown to be prejudiced, or to have ill-feeling against the accused, but the facts and circumstances causing such prejudice or ill-feeling, can not be stated in detail by the witness.

3. SAME:  *Contradiction of.  Collateral matter.  Test of.*

When a witness is cross-examined on a matter collateral to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question.

The test of whether a fact inquired of in cross-examination is collateral, is this :  Would the cross-examiner be entitled to prove it as part of his case, tending to establish his plea.  This limitation, however, only applies to answers on cross-examination.  It does not affect answers to the examination in chief.

4. ADMISSIONS :  *State may prove, but not, defendant.*

The state may prove any voluntary admissions made by the defendant, but the defendant has no right to prove admissions made by himself to another person at a different time.

APPEAL from *Conway* Circuit Court.

Hon. —— ——, Circuit Judge.

*Fletcher*, for appellant.

*Henderson, Attorney General, contra.*

ENGLISH, C. J.   At the September term of the circuit

court of Conway county, 1879, Ephraim Butler was indicted as follows:

"The grand jury, etc., etc., accuse Ephraim Butler of the crime of *felony*, committed as follows, viz.: The said Ephraim Butler, on the first day of August, 1879, in the county, etc., aforesaid, in and upon one Green Hill, then and there being, with a certain knife, unlawfully, feloniously, willfully and of his malice aforethought, did make an assault, with intent him, the said Green Hill, then and there unlawfully, feloniously, willfully, and of his malice aforethought, to kill and murder, *then and there no considerable provocation occurring*, against the peace," etc.

He was tried on the plea of not guilty, convicted, and his punishment fixed by the jury at imprisonment for three years in the penitentiary; he filed motions for a new trial and in arrest of judgment, which were overruled. He took a bill of exceptions, and, on final judgment, prayed an appeal, which was allowed by one of the judges of this court.

I. The indictment has a bad Code beginning. *Felony* is the name of no particular crime, but designates a class of crimes punishable in England by forfeiture of lands and goods to the crown, and, by our statute, with death, or imprisonment in the penitentiary. *Gantt's Digest, section 1225.*

In the body of the indictment, however, appellant is distinctly and specifically charged with the crime of an assault with intent to commit murder. The words, "*no considerable provocation appearing*," are proper in an indictment for an aggravated assault, under *sec. 1298, of Gantt's Digest*, but are unnecessary and inappropriate in an indictment for an assault with intent to commit murder, and may be treated as surplussage.

31

The indictment was good, in substance.  See *Lacefield v. State, ante.*

II. There is the usual ground in the motion for a new trial, that the verdict was not warranted by the evidence.

GREEN HILL, the person assaulted, was the principal witness for the state.  It appears from his testimony that he was staying at Dan Tucker's house, in Conway county, and making a crop on Levin Hill's farm, on which the house was situated.  About the first of August, 1879, he started from the house, on horse, to his field to get a watermelon for Mrs. Levin Hill, and met appellant on the turnrow, walking, and said to him, "You have been talking about me;" and he replied, "Yes, G—d d—mn you; I have, and now I am ready to settle it; G—d d—mn you, I will whip you, or you will whip me."  Appellant then took hold of the bridle of the horse of witness, and thereupon he dismounted; appellant struck at witness, and witness knocked him down; he arose and struck at witness again, and again witness knocked him down, and held him down until he agreed to quit; whereupon, witness let appellant up, and went to his horse, which, in the meantime, had walked off some twenty yards—appellant and witness walking together, and talking in a friendly manner.  Witness went up on the left, and appellant on the right side of the horse.  While witness was standing there, with his right side to the horse, his right arm resting on the saddle, and his face turned from the horse, appellant ran around the heels of the horse, came up in front of witness and stabbed him in the right breast with his left hand.  That when he was struck he ran three steps and fell; appellant then jumped on him, and went to cutting him—cut him, in all, three times in the breast, twice in the head, and once in each hand.  Witness then arose, threw off appellant,

and ran 150 yards to Dan Tucker's house, appellant running after him. When he reached the house, he ran up on the porch, and said to appellant, "Mr. Butler, if you intend to kill me, I can not run any further." Witness then picked up a drawing-knife; Christiana Tucker then commenced talking to appellant, and he walked away, and witness sat or fell down in a chair.

Appellant, at the time he was stabbing witness, first held the knife in his left hand, witness caught his left hand, and then he changed the knife to his right hand.

CHRISTIANA TUCKER testified that she knew nothing of the fight between appellant and Green Hill until the latter ran up on the porch. Appellant had a knife in his hand. Hill's shirt was bloody. Appellant's shirt and his knife were bloody. Hill picked up a drawing-knife on the porch, and said he could not run any further, and told appellant not to come any further. Appellant picked up a piece of a rail, and she told them not to fight any more. Hill staggered or fell into a chair, etc.

Much more testimony was introduced, but nothing to contradict the leading facts, above stated.

There was an attempt, on the part of the defense, to prove that Hill went into the field armed, to hunt and attack appellant.

HILL testified that when he went to the field he had a pistol in his pocket. That in the first or fist scuffle, while he was holding appellant down, the pistol dropped from his breast-pocket, and when appellant saw it, he said to witness, "You brought that pistol here to shoot me with." Witness replied, "I did not; it is an old and no count pistol, and will not shoot, and is not loaded," and then offered the pistol for appellant's inspection, and he refused to examine it.

There was no want of evidence to sustain the verdict. The conduct of appellant, at the time he stabbed Hill, by the horse, indicates deliberation and malice.

If the wounds inflicted upon Hill with the knife, had caused his death, and appellant had been indicted for murder, we can not undertake to say, that a jury might not, upon the evidence disclosed in the bill of exceptions in this case, have found him guilty of murder in the second degree.

Dr. Gordon, who attended Hill, testified that he was suffering from divers cuts and stabs, the most serious of which was one in the right breast, which was about three inches deep—the knife having penetrated the lung.

II. On cross-examination of Christiana Tucker, witness for the state, appellant asked her if Green Hill had not, a few days before the difficulty, detailed to her scandalous matter as coming from appellant, impugning her character and virtue.

The court sustained an objection to the question, deciding that the witness could not detail the facts and circumstances of such scandalous matter, but that she might be asked if she had any bias or ill-feeling towards appellant.

The bill of exception states that the object of the question was to show bias and ill-feeling on the part of the witness, and also ill-feeling and malice on the part of Hill against appellant.

It may be shown by proper questions that a witness for the state is prejudiced, or has ill-feeling against the accused; but the facts and circumstances causing such prejudice or ill-feeling can not be stated in detail by the witness. *Cornelius v. The State, 12 Ark., 800.*

If Hill communicated to the witness scandalous matter about her as coming from appellant, there was no offer

to prove that the fact was communicated to appellant before the difficulty; it was no part of the *res gestæ*, and could throw no favorable light upon the conduct of appellant at the time he stabbed Hill.

III. Christiana Tucker testified that appellant was in the employment of, and lived with her husband before and to the time of the difficulty. That she afterwards found the bloody shirt, worn by him, rolled up and stuck under the corner of the house. That she took it out and asked her husband, Dan Tucker, if she should wash it; and he instructed her to wash it, and she did wash the shirt and sent it to appellant. This statement about washing the shirt she made on cross-examination by appellant.

Appellant offered to prove by his witness, Dan Tucker, "that he did not request her to wash the blood stains from off the back and front of the shirt worn by appellant on the day of the conflict."

The bill of exceptions states that this testimony was offered by appellant " to show the animus of the state's witness (Mrs. Tucker) towards him ; and also by way of impeachment, showing the statement made by her as to the request or order for washing said blood stains was wholly false."

The court ruled that the evidence so offered was inadmissible.

We can not see how it was at all material whether the witness washed the shirt of her own accord or by direction of her husband.

" In order to avoid an interminable multiplication of issues, it is a settled rule of practice that when a witness is cross-examined on a matter collateral to the issue, he can not, as to his answer, be subsequently contradicted by

the party putting the question. The test of whether a fact inquired of in cross-examination is collateral is this— would the cross-examining party be entitled to prove it as part of his case, tending to establish his plea. This limitation, however, only applies to answers on cross-examination. It does not affect answers to the examination in chief." *1 Wharton Evidence, sec. 559.*

IV. Levin Hill, witness for the state, having testified as to admissions made to him by appellant, after he had arrested him on the evening of the difficulty, appellant offered to prove that at 10 o'clock the next day, the same statement in every particular was voluntarily made by him to A. D. Ellis, the constable, who had him in custody; and the court, on the objection of the state, ruled the statement to Ellis inadmissible.

The state had the right to prove any voluntary admissions made by appellant to Levin Hill, but appellant had no right to prove admissions made by himself to another person at a different time.

V. The court, on behalf of the state, gave to the jury eleven instructions; appellant specifically objecting to the sixth and seventh.

The court charged the jury, in the series of instructions given for the state, that to warrant a conviction for an assault with intent to murder, the evidence must be such that if death had ensued it would have been murder in the first or second degree; defined murder, express and implied malice, justifiable homicide, etc., and said to the jury that if they entertained a reasonable doubt of the defendant's guilt of the higher offense charged in the indictment, they might find him guilty of an aggravated or a simple assault, and defined these lesser offenses.

The sixth instruction may be subject to verbal criticism, but is in substance unobjectionable.

The seventh, that "the use of a deadly weapon may be considered by the jury as evidence tending to establish the intent to kill," was not erroneous when considered in connection with the facts and circumstances under which appellant used his knife in stabbing Hill, as disclosed by the evidence.

The appellant asked fourteen instructions, some of which the court gave, and refused others.

Without incumbering this opinion by copying the instructions refused, it is deemed sufficient to say that some of them were inapplicable to the case made by the evidence, and others contained objectionable expressions.

Upon the whole, the law of the case was submitted fairly to the jury by the court, and the evidence warranted the verdict.

Affirmed.