LASSITER *v.* STATE.

Opinion delivered January 13, 1919.

1. CRIMINAL LAW—CONTINUANCE—DILIGENCE IN SECURING EVIDENCE.
—Where defendant was indicted in March, and the cause was continued until the September term, and subpœnas were not issued for defendant's absent witnesses until the last of August, and it was then known that witnesses were in the army, and two of them in France, a continuance was properly refused because defendant was negligent in not taking their depositions and because there was no certainty as to when their attendance could have been secured.

2. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a verdict of murder in the second degree.

3. CRIMINAL LAW—EXPERT TESTIMONY—QUALIFICATION.—A witness who, while not a surgeon, had hunted and killed much game and was familiar with the appearance of gunshot wounds, was qualified to testify as to position and direction of bullets in the body of deceased.

4. HOMICIDE—JUSTIFICATION—EXCLUSION OF EVIDENCE.—In a murder trial, the exclusion of a letter from deceased to defendant's daughter proposing marriage was not error since it could furnish no justification for the killing.

5. CRIMINAL LAW—APPEAL—EXCLUSION OF EVIDENCE.—The exclusion of the answer of a witness calling for statement of testimony of another witness will not be considered on appeal where it does not appear what the answer of the witness would have been.

6. WITNESSES—IMPEACHMENT—FOUNDATION.—It was not error to exclude testimony as to what a witness had testified at the coroner's inquest for the purpose of contradiction, where it does not appear that proper ground for impeachment was laid by asking what his testimony had been on that occasion.

7. WITNESSES—IMPEACHMENT OF DEFENDANT—ACQUITTAL OF FORMER CHARGE.—Where, in a murder trial, defendant swore that he was tried and acquitted for another shooting, it was proper for the court merely to allow him to show the acquittal, but not permit him to go into the facts and circumstances of the other case.

8. HOMICIDE—INSTRUCTIONS.—Instructions as to self-defense in a murder case, where defendant twice shot deceased, which would have required the jury to disregard testimony relating to an unjustified shot which might have hastened deceased's death, were properly refused.

Appeal from Cleburne Circuit Court; *Jno. I. Worthington*, Judge; affirmed.

*George W. Reed*, for appellant.

1. The court erred in overruling defendant's motion for a continuance because three of his witnesses were in the army and beyond the reach of the court, whose testimony would have contradicted and tended to lessen the weight of the testimony of Mahan, the State's principal witness.

2. Defendant was justified in firing the first shot in self-defense. He was guilty of no higher offense than

manslaughter in firing the later shots, even if it was apparent that all danger had passed, and he was acting under the influence of passion aroused by the difficulty. 163 S. W. 66.

3. It was error to permit witness Jordan to testify about the wounds, as he was unqualified to give such testimony.

4. It was error for the court to pass upon the sufficiency of the evidence of witness Collom. The court's remarks at the time were improper and prejudicial.

5. It was prejudicial error to allow Mrs. J. I. Mahan to give original testimony after defendant had closed his case.

6. It was prejudicial error to refuse defendant the right to explain circumstances of his having shot a man in Texas after the State had brought out this evidence.

7. Error of the court is assigned in giving and refusing to give various instructions.

*John D. Arbuckle*, Attorney General, and *T. W. Campbell*, Assistant, for appellee.

1. The motion for continuance was properly overruled because of the lack of diligence on the part of appellant in procuring the testimony of his absent witnesses. 78 Ark. 36; 92 Ark. 28; 94 Ark. 169; 94 Ark. 538; also because no showing was made that their testimony could be procured for the next term of court. 90 Ark. 384.

2. The evidence supports the verdict. Appellant's own testimony discloses every element essential to constitute second degree murder. *Lasater* v. *State*, 133 Ark. 373.

3. No error in admission of testimony of witness Jordan. Non-expert witnesses may testify as to physical condition of human body when the character and cause of injuries inflicted thereon are in issue. 95 Ark. 310; 118 Ark. 337; 125 Ark. 86.

4. It is within the discretion of the trial court to permit the State to introduce original evidence in rebut-

tal after the defendant has closed his testimony.  69 Ark. 558; 83 Ark. 272; 38 Ark. 498.

5.  No error in court's remark as to evidence of witness Jordan.  It was made in the exercise of the duty imposed to control the introduction of evidence.  Kirby's Digest, Sec. 3134.

6.  No foundation was laid for attempting to impeach witness Mahan.  Kirby's Digest, Sec. 3139; 37 Ark. 324; 69 Ark. 648.

7.  No error in giving and refusing instructions. Number 9 given by the court is in accord with 29 Ark. 248.  Number 19 given by the court is in accord with this court's holding in 93 Ark. 409; 96 Ark. 52; 70 Ark. 272; 76 Ark. 515; 77 Ark. 464.  Such of appellant's refused instructions as were correct were covered by other instructions given by the court.

SMITH, J.  Appellant has prosecuted this appeal to reverse the judgment of the trial court sentencing him to a term of seven years in the penitentiary upon a conviction for murder in the second degree.  The indictment charged murder in the first degree and alleged its commission by shooting one Eoff with a gun.  The defense interposed was that of self-defense, and appellant testified that he fired the fatal shots in his necessary self defense and only to prevent the infliction of great bodily harm upon himself.  Eoff was a widower and had courted appellant's daughter, but she had declined or ignored his offer of marriage, and there is testimony to the effect that thereafter Eoff spoke of her very disparagingly.  The testimony is conflicting as to the cause of the ill will which existed between Eoff and appellant, but the existence of bad blood is not denied.  Appellant says that this feeling had become so acute that a conspiracy was formed between Eoff and one Mahan, the purpose of which was to kill appellant, or to do him great bodily harm.  At the trial of the cause appellant filed a motion for a continuance in order that he might procure the attendance of witnesses to show the existence of this con-

spiracy, and the action of the court in refusing this continuance is one of the errors assigned for the reversal of the judgment. Other errors assigned consisted in the admission and exclusion of certain testimony; and in the giving and refusing of certain instructions; and certain remarks made by the court during the progress of the trial; and that the testimony was not sufficient to support the verdict.

The motion for a continuance was properly overruled, for the reason that due diligence was not shown in the attempt to procure the presence of the absent witnesses or to take their depositions. Appellant was indicted on March 5th and was arrested and admitted to bail on March 6th, and the cause then continued to the September term of the court. A subpœna for the absent witnesses was issued on August 30th, but it was then known and had all along been known that the witnesses were in the army and two of them were in France and there was no certainty as to when the attendance of the witnesses could have been secured. Appellant should have taken the depositions of these witnesses at some time within the five months intervening between the time of his arrest and his trial. Moreover, much of the testimony which it was stated the absent witnesses would have given had they been present was cumulative of other testimony offered at the trial.

In regard to the sufficiency of the testimony, it may be said that one Mahan, near whose house the killing occurred and who was an eye witness, testified that the parties were standing on opposite sides of a fence about three or four feet high. That appellant went to the fence and as soon as he reached it commenced shooting without any previous loud talking or quarreling. That Eoff was unarmed and "was running backward, it looked like, to ward off the fire of the gun the best he could." That several shots were fired and that Eoff died about the time he fell and that "he (Eoff) was further from the fence when the last shot was fired than the first. He run backward with the fence, only angling off from the fence

some,'' and that Eoff was twenty-eight feet from the fence when he fell.

The alleged error in the admission of testimony was committed in permitting a witness named Jordan to testify where the bullets had entered and had come out of the body. This witness was not a surgeon, but stated that he had hunted a great deal and had killed much game and was familiar with the appearance of gunshot wounds and could tell the point of entrance and of exit of bullets by the appearance of the wound which they had made. This witness testified that one of the bullets entered the back about three or four inches to the left of the spinal column and came out in front of the breast, and that another ball went through the shoulder and lodged against the skin of the breast and was cut out by the doctor. This witness testified that in killing game he ''often observed that the bullet made a round hole where it entered but would tear its way out of the flesh and left a three-cornered hole,'' and the witness located the points of entrance of the wounds by describing them as the small round ones. We think this was not a subject upon which only an expert could testify; but if such were the case the experience which the witness was shown to have had in killing game furnished the qualification. *Pfeifer Stone Co.* v. *Shirley,* 125 Ark. 186.

The errors alleged to have been committed in the rejection of testimony were as follows:

*First.* The refusal of the court to permit a Mrs. Cullom and appellant's daughter to testify as to the contents of a certain letter written Miss Lassiter—the daughter—by Eoff. The contents of the letter were stated to the court out of the presence of the jury and consisted in a very matter of fact, but honorable, proposal of marriage, in which Eoff stated that he was looking for a wife to take care of his orphaned children and that she was his first choice. This proposal, however repulsive it may have been, could furnish no justification for the killing, and we cannot conceive how the exclusion of the testimony in regard to it could have been prejudicial.

*Second.* A witness was asked what the testimony of Mahan—a witness for the State—had been at the coroner's inquest, and an objection to this question was sustained. This was not prejudicial even though it may have been erroneous, because no effort was made to show what the witness' answer would have been had he been permitted to make answer, and it is therefore, only speculative that an answer would have been given which would have been of value to appellant. Moreover, the testimony could have been competent only for the purpose of contradicting Mahan, and it does not appear that any proper foundation for thus impeaching Mahan was laid by first asking him what his testimony had been on that occasion. Kirby's Digest, Sec. 3139.

On his cross-examination appellant was asked why he was carrying his pistol if he was not expecting trouble, and answered that five or six years prior to that time he had had trouble with some men in Texas, and during a trial which grew out of this trouble these men had threatened to kill him. He was then asked if he had killed a man in Texas and answered that he had not but admitted that he had shot a man there. After stating that he was tried and acquitted for this shooting he insisted on stating the circumstances relating thereto, whereupon the court said: "You cannot go into that trial, into the facts and circumstances, but simply show that he was acquitted." No error was committed in this ruling.

The court gave an elaborate charge and at the request of both the State and the defense gave a number of special instructions. Instructions numbered 17 and 18 requested by appellant were refused. They read as follows:

"You are instructed that if you find that either of the shots fired by the defendant was necessary to prevent the deceased from inflicting great bodily injury upon, or the taking of the life of defendant, and the shot so fired was a fatal shot, you will not consider any subsequent shots that may have been fired.

"You are instructed that if you find from the evidence that it was necessary for the defendant, in order

to prevent the deceased from taking his life or inflicting great bodily injury upon him, to defend himself, and in defending himself, shot the defendant a fatal shot, and thereafter fired other shots which were not necessary in his self-defense, that you cannot convict him for shooting any shot after the fatal shot was fired.''

These instructions were properly refused. Under them the jury would have been required to disregard any testimony relating to an unjustified shot although it hastened Eoff's death if one of the fatal shots was fired in self-defense. This is not the law.

Certain instructions asked by appellant which appeared to contain correct declarations of law were refused. But no error was thus committed, for the reason that other and correct instructions covering the same points were given.

Finding no prejudicial error the judgment is affirmed.