PATTERSON *v.* STATE.

Opinion delivered April 1, 1929.

310

*Edward Gordon* and *Hays, Priddy & Rorex,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted, tried and convicted in the circuit court of Pope County for willfully, unlawfully and feloniously stealing and carrying away twenty-two bales of cotton belonging to W. M. Godbey & Sons, a partnership composed of W. M. Godbey, Wylie Godbey and Buck Godbey, and, as a punishment therefor, was adjudged to serve a term of two years in the State Penitentiary, from which is this appeal.

The theory of the State was that appellant purchased the cotton in question for W. M. Godbey & Sons with its money, with the understanding that he should receive the profits realized from the sale thereof for his services, and put it in a space in the cotton-yard in Atkins which was contracted for by said partnership, and that, when placed there, the several bales of cotton were branded with a "P" to identify it as cotton purchased by appellant for said partnership; and that, without its consent or knowledge, he removed same from the yard in Atkins to Morrilton, and pledged it to the First National Bank of Morrilton for $1,500, with the felonious

intent of depriving said partnership of it. The State introduced testimony tending to support that theory.

The theory of the appellant was that he borrowed money from W. M. Godbey & Sons with which to buy cotton for himself, with the understanding that he should receive for his services the profits realized from the sale thereof, and that he had a right to remove it and sell it at his will. Appellant introduced testimony tending to support his theory.

According to the undisputed proof, appellant removed twenty-two bales of the cotton purchased with money received from W. M. Godbey & Sons, without its consent or knowledge, from the cotton-yard in Atkins to the compress in Morrilton, and pledged same to the First National Bank of Morrilton to secure a loan of $1,500.

Appellant's first contention for a reversal of the judgment is that he acquired an interest in the cotton by virtue of his agreement with W. M. Godbey & Sons to receive for his services all the profits which should be realized from the sale thereof, and that the joint interest thus acquired carried with it the right to possession, to sell or pledge same, without being guilty of larceny. Appellant requested an instruction to that effect, which the court refused to give the jury, over appellant's objection and exception.

Appellant is mistaken in his conclusion relative to the law applicable to the case. The right to receive profits to be realized from the sale of the cotton as compensation for his services only entitled him, as a matter of law, to a part of the proceeds when sold for a profit, and not to a property interest in the cotton itself. The right of possession, to sell or pledge the cotton, did not follow as a necessary result from the agreement to receive the profits from the sale thereof for his services. The questions of who owned the property, who had the possession thereof, and the right to sell same, were questions of disputed fact.

The testimony introduced by the State tended to show that the space in the cotton-yard where same was put was contracted for by W. M. Godbey & Sons and that the sale of the cotton should be supervised by Wylie Godbey, a member of said partnership. The testimony introduced by appellant tended to show otherwise. Appellant is bound by the adverse finding of the jury on these disputed questions of fact.

Appellant's next contention for a reversal of the judgment is that the trial court erred in refusing to give his requested instruction No. 4, in the form requested, which is as follows: "Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another. To constitute the crime of larceny there must be a felonious taking and a felonious carrying away. The word 'felonious' means that there was no color of right or excuse for the act, and that the intent must be to deprive the owner permanently of his property." The court modified the instruction, and gave it as modified, over the objection and exception of appellant. The modification consisted in inserting the word "lawful" before the word "color," and striking out the word "permanently," which modification made the last sentence in the requested instruction read as follows:

"The word 'felonious' means that there was no lawful color of right or excuse for the act, and that the intent must be to deprive the owner of his property."

Inserting the word "lawful" was a correct modification of the right or excuse for appellant's act in removing and pledging the cotton. Of course, the exercise of an unlawful color of right or excuse would not and could not justify the act. Appellant argues, however, that striking out the word "permanently" had the effect of depriving him of his defense to the effect that he only intended by pledging the cotton to deprive W. M. Godbey & Sons of it until he could get a fair settlement out of it for his services. We do not understand that appellant claimed that he intended only by moving and pledging

the cotton to deprive W. M. Godbey & Sons temporarily of same, but that he had the right to do so because he, and not W. M. Godbey & Sons, owned the cotton. He testified that he owned the cotton, and that W. M. Godbey & Sons loaned him the money to buy it, and that the title to same was in him, and not in W. M. Godbey & Sons. The issue joined was who owned the cotton, the right to remove and dispose of same being dependent on who had the title thereto. The real and only issue in the case was whether the cotton was bought for W. M. Godbey & Sons or whether it was bought by appellant for himself, with money borrowed from W. M. Godbey & Sons.

Appellant's next contention for a reversal of the judgment is that the court erred in refusing to give his requested instruction No. 5, which is as follows:

"If you find from the evidence in this case that W. M. Godbey & Sons advanced money to the defendant, Patterson, with which to purchase cotton, charging him with such advances on their books, and permitted him to sell said cotton from time to time and apply the proceeds thereof on said account; and if you believe from the evidence that the defendant, Patterson, under his contract with Godbey & Sons, would be responsible and have to bear any and all losses on the purchase and sale of said cotton, if any, and would be entitled to all the profits made on said cotton, then the court instructs you he would not be guilty of larceny in this case, even though you may believe from the evidence that he sold or otherwise disposed of the twenty-two bales of cotton in controversy with the intent to defraud them."

Appellant argues that this request covered his theory of the case, and that he was entitled to have his theory submitted to the jury. The effect of this instruction was to tell the jury that, if appellant borrowed the money and bought the cotton for himself, the disposition thereof could not and would not amount to larceny, although his intention in removing and pledging same was to defraud W. M. Godbey & Sons. This theory of the case

was covered by instruction No. 6 given by the court, and error was not committed in refusing to give another instruction presenting the same theory. Appellant advances the argument that instruction No. 6 given by the court did not cover his theory because it limited the issue to the title or ownership of the cotton, and thereby ignored the theory that, if appellant acquired lawful possession thereof and afterwards pledged same with the felonious intent of depriving W. M. Godbey & Sons of it, he would be guilty of embezzlement, if guilty of any crime, and not the crime of larceny, for which he was indicted and tried. The issue was properly limited to the ownership of the cotton under the testimony in the case, for the testimony of neither party tended to show that appellant acquired the lawful possession of the cotton and afterwards converted it to his own use with intent to deprive W. M. Godbey & Sons of it.

Appellant's last contention for a reversal of the judgment is the refusal of the trial court to permit the witness, Bruce Medlock, to testify that Patterson offered to sell him the cotton for $19\frac{1}{4}$ cents. In order to show bad faith on the part of appellant, the State introduced testimony to the effect that he offered to sell the cotton for $18\frac{1}{4}$ cents, which was considerably below the market value, the purpose being to get it out of the way of W. M. Godbey & Sons. It is a well-established rule of evidence that the State may prove statements made by a defendant tending to establish his guilt, but the rule is also well established that the defendant cannot, in rebuttal of such testimony, introduce self-serving statements made by him tending to show his innocence. The statements appellant made to Bruce Medlock were in the nature of self-serving declarations, and the court properly excluded them.

No error appearing, the judgment is affirmed.

KIRBY, J., dissenting.