JORDON v. STATE.

5113                                    382 S. W. 2d 185

Opinion delivered September 28, 1964.

*Odell C. Carter* and *T. S. Lovett, Jr.,* for appellant.

*Bruce Bennett,* Attorney General, By: *John P. Gill,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Omar Jordon, was charged by Information with the crime of murder, the information alleging that Jordon murdered James Scott by shooting him with a pistol. On trial, Jordon was convicted of voluntary manslaughter, and was sentenced to six years imprisonment. From the judgment so entered, appellant brings this appeal. The sole contention of error raised by appellant is that the court refused to instruct the jury on the defense of justifiable homicide.

The proof reflected that Jordon was a partner with Willie Jordon, his brother, in the operation of a pool hall and cafe at Grady, Arkansas. Appellant would assist in operating the establishment on weekends. On December 14, 1963, Omar Jordon went to the place of business; while sitting on a bench he was struck in the head by a bottle thrown at him by Joe Nathan Hill, a patron of the cafe. Appellant, knocked off the bench by the blow, reached for his pistol, which he was carrying in his belt.[1] While being drawn, the pistol fired, and James Scott, a bystander, was struck by the bullet, and subsequently died. Jordon stated that Hill (who, after hitting appellant with the bottle started toward the outside door) was facing appellant, and backing out the door with a pistol in his hand.

Appellant requested the following instruction:

"Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony."[2]

The court refused to give the instruction, and, as stated, appellant contends that the failure to so instruct constituted prejudicial and reversible error.

It is first the position of the state that self-defense, or justifiable homicide, is not a valid defense where the testimony reflects that the killing resulted from an accidental or unintentional act. Of course, if the sole defense of a defendant is that a killing was accidental, there would be no occasion for an instruction on self-defense or justifiable homicide. As stated in *Curry* v. *State*, 97 S. E. 529:

"Furthermore, if there was no intent to kill, the law of killing in self-defense, in the ordinary sense in which that is understood, does not enter into the case, since that only applies where the accused intentionally kills

---

[1] As a reason for carrying the pistol, Jordon stated: "I come out there and set stuff on the counter, sometimes I put cash you have to have for Saturday night at the back."

[2] Ark. State. Ann. § 41-2231 (1947).

his assailant to protect his own life, or to prevent the commission upon him of a serious injury amounting to a felony.''

It is true that appellant testified that Scott was killed when the weapon discharged accidentally, and appellant's brother, Willie Jordon, testified that Omar told him, immediately following the shooting, ''my pistol went off.'' However, appellant testified that he was in the act of drawing the pistol as a matter of defending himself from Hill; that the weapon discharged accidentally when someone grabbed his arm, and the bullet struck Scott. From appellant's testimony:

''When I fell I went to get up and try to defend myself and someone had my hand and the gun, the gun went off; where it was pointed I don't know, but I did reach for the gun. * * * When I was hit I fell and I could see him reach for his gun. I reached for my gun and someone grabbed me and the gun went off.

Q. You lay it on somebody else for grabbing the gun in your hand?

A. I could see it all myself, he did have the gun.

Q. Then you say it was completely an accident, it wasn't to protect yourself at all?

A. When I drew the gun I was trying to defend myself.''

According to this evidence, though Scott was killed by the accidental discharge of the weapon, the weapon itself was brought into play intentionally by Jordon as a means of defending himself against Hill. It follows that we do not agree with this argument advanced by the state.

It is also asserted that the instruction was properly refused by the court because the evidence established that the assailant (Hill) was retreating at the time of the homicide. *McDonald* v. *State,* 104 Ark. 317, 149 S. W. 95, is cited by the state on this proposition. In that case, we said that if an individual, though the assailant,

endeavored to withdraw in good faith from the combat, the danger had ceased to be immediate and urgent, and the defendant had no right to make and continue the pursuit of the deceased, and could not justify a killing on the ground of self-defense.

In the case before us, it is undisputed that Hill struck Omar Jordon with a bottle at a time when there was no altercation between these individuals, *i.e.,* the assault was unprovoked. Likewise, three witnesses, besides appellant, testified that Hill had a pistol, though only appellant himself testified that Hill was standing in the doorway pointing the gun toward appellant when the latter reached for his weapon. All witnesses agree that Hill, after striking appellant, went to the outside door, but the testimony is in conflict as to whether he stood in the door or went on to the outside. Hill himself testified, ''I turned and backed out. * * * I saw him go for his gun as I began to turn to run.'' Hill, however, denied that he had a pistol.

The circumstances in *McDonald* were vastly different from those at hand. According to appellant's testimony, his assailant had not actually retreated (and there was certainly no pursuit); rather, Hill was standing in a position, and with the means (the pistol) to continue the assault. The state's contention might be valid, if, under the testimony, Hill had only been armed with a knife, or brass knucks, for appellant would have been in no *immediate* jeopardy. But the possession of the pistol would have enabled Hill to inflict death, or great bodily harm, upon the appellant from the doorway. Under these conditions, there was no duty to retreat. As was stated in *Luckinbill* v. *State,* 52 Ark. 45, 11 S. W. 963:

''The deceased never retreated to a place from which he could not, if he had desired, have shot the defendant. The evidence tended to show that he was not attempting to retire from the combat, but was merely seeking a situation more favorable for waging it. If such was true, it was not incumbent on the defendant to suspend his

defense until the deceased had gained the situation he sought, but he had the same right to defend himself as if the deceased were standing and attempting to shoot him.

This citation also completely refutes the state's contention that the instruction offered was incorrect, because it did not include the defendant's duty to retreat. Let it be remembered that, undisputedly, the whole chain of events lasted for only a few seconds, and appellant, suddenly knocked to the floor by the throwing of the bottle (according to his own testimony) reached for his pistol on observing Hill in the doorway with the pistol.

The general instructions ordinarily appropriate in a homicide case were given, *i.e.*, the reasonable doubt instruction, the definition of murder, the meaning of the terms "express malice" and "implied malice," the difference between first and second degree murder, and the definition of voluntary manslaughter. The court also instructed the jury that the defendant claimed that the killing was the result of an accident, and further instructed that body as to the definition of involuntary manslaughter.

The court's Instruction No. 12 was as follows:

"If you believe from the evidence beyond a reasonable doubt that the defendant in Lincoln County, Arkansas, on the 14th day of December, 1963, wilfully, unlawfully and feloniously, with malice aforethought, shot at Joe Nathan Hill at a time when Joe Nathan Hill was doing him no harm nor attempting to do him any harm, and the bullet struck James Scott and killed James Scott, you will convict the defendant of the crime of murder in the second degree."

This instruction was correct. In *Ringer* v. *State*, 74 Ark. 262, 85 S. W. 410, which bears a strong similarity to the case at bar, the evidence reflected that the defendant (appellant) was violently assaulted by one John McCollum, who cut the defendant with a knife. McCol-

lum then turned, and ran over a hill to the rear of the store, but the defendant did not know this. Excited and bleeding from the wounds he had received, the defendant hurried to the back of the store, seized his gun, and turned and fired toward the door. During the difficulty, York McCollum, father of John, had been seated in the store. About the time Ringer reached his gun, York McCollum started toward the door, and the shot fired by Ringer struck York McCollum in the back and killed him. Ringer expressed regret, stating that he "did not intend to hit York" but that he had fired toward the door under the belief that John McCollum was about to reenter and renew the assault upon him. In discussing these facts, this court said:

"So in this case the guilt of the defendant depends to a large extent on whether his intention at the time he fired the shot was to do an act made criminal by the law. If the act he intended to do was criminal, then the law holds him responsible for what he did, even though such result was not intended. On the other hand, if he intended only a lawful act, he will not be punished for a result that he did not intend, if he acted with due care.

"As a matter of course, if defendant intended to shoot York McCollum, the man he killed, he is guilty, for this man had done nothing; but if, on the other hand, he fired the shot to protect himself against John McCollum, then whether his intention was criminal or not must depend upon the circumstances as they appeared to him at the time he fired the shot. The law does not hold it unlawful or criminal for a man to shoot in necessary self-defense; and if the defendant believed that John McCollum was still following up the attack, and that it was necessary to shoot in order to protect himself, then the intention with which the act was done was not criminal; for, as before stated, it is not unlawful to intend to do an act which one honestly believes to be necessary to protect himself, when the circumstances justify such belief. Again, if the defendant knew that John McCollum was not in the doorway, but believed that he was near there, and, thinking that he might renew the

attack, fired in order to frighten him, then for a much stronger reason he is not guilty of a criminal intent in firing the shot; for, if one may take life in self-defense, it follows, of course, that he may commit an act designed only to frighten and drive away a person whom he believes is about to assault him. * * *

"* * * Believing that McCollum was about to enter the doorway and follow up his assault with a knife, defendant seized his gun and fired towards the door to protect himself against the assault upon his life which he belived was impending, but with no intention of hitting York McCollum, who was in the store at the time with the defendant. Under these circumstances, we are not able to say, as a matter of law, that the intention of the defendant in firing this shot was unlawful and criminal. We think that was a question for the jury."

This is the same contention urged by appellant in this case, *i.e.*, that Scott was killed without intent, at a time when Omar Jordon was justified in defending himself against Joe Nathan Hill.

We think Jordon was entitled to this instruction, particularly after the court had given, on its own motion, Instruction No. 12. The defendant's requested instruction was the direct opposite, the antithesis, of Instruction No. 12. If the jury was to be instructed that appellant was guilty of murder in the second degree, if he unlawfully and feloniously shot at Hill and killed Scott, then, at his request, appellant was entitled, under the proof, to have the jury told that, if the killing of Hill would have been justifiable homicide, he was not guilty of any offense in shooting Scott. Though an instruction using the names of the parties would probably have presented the matter more clearly, the proffered instruction was a copy of the statute, and, we think, together with all the other instructions given by the court, made clear the position of the appellant.[3] No instruction was given defining self-defense or justifiable homicide, though

---

[3] Of the sixteen instructions given by the court, only No. 12 and No. 13 specifically used names.

these terms are referred to in two or three other instructions.

While the jury might not have believed appellant's testimony to the effect that Hill was standing in the door with a pistol, and might well have reached the same verdict, we think Jordon was entitled, under the evidence, to have his version presented. We cannot say that the failure to give this instruction constituted only harmless error.

Because of the error heretofore set out, the judgment is reversed and the cause remanded to the Lincoln Circuit Court.

SMITH, J., dissents.

GEORGE ROSE SMITH, J., (dissenting). A new trial is being ordered because the court refused to give this instruction: "Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony." Jordon was entitled to an instruction submitting the defense of justifiable homicide, but I do not think the one he asked for was proper in this particular case.

The requested instruction stopped short after telling the jury in general terms that the killing of a person in necessary self-defense is justifiable. It did not tell the jury, as I think it should have, that if the killing of Hill would have been justifiable then the killing of Scott in the course of an attempt to exercise the right of self-defense against Hill would also have been justifiable. Nor was that point of law explained to the jury in any other instruction. It is such a difficult point that I cannot believe the jury, upon being told that Jordon had a right of self-defense against Hill, would have inferred that the right might also be carried over to justify the accidental killing of Scott. Thus the requested instruction was an abstract one and was, in my judgment, properly refused.