BILL STOUT *v.* STATE OF ARKANSAS

5329                                      426 S. W. 2d 800

Opinion delivered April 22, 1968

*Sam Sexton,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Bill Stout was tried on a first degree murder charge for the fatal shooting of Winfred Lee Jones. From a conviction of manslaughter he appeals. Eight procedural errors are urged for reversal.

Stout and Jones, both in their thirties, were friends. Both were family men and they visited in each other's homes. On the day of the shooting, Jones went to the Stout home in Fort Smith and the two men drank some beer. Stout said he consumed two beers. Stout was working on a cabinet and Jones helped with the task. Stout went to work on a 4:00 p.m. shift and when he left home about thirty minutes earlier, Jones remained at the Stout home. Shortly after six o'clock Stout received a call from a member of his family, informing him that Jones was still at the home, and was belligerent and insulting. Stout obtained a short leave and went home. He asked Jones to leave and the latter refused. Stout went to a nearby telephone and called the police. Officer Hamlet declined to answer the call unless Stout would come in and swear out a warrant. It was Stout's testimony that he returned to his home; that he sent word in to Jones to come outside; that Jones refused; whereupon Stout walked inside the door. Jones arose from a couch and "went to his left-hand pocket again." It was at that point that Stout fired his pistol, fatally wounding Jones. The defendant testified he knew Jones had a knife and thought he might have a pistol.

Stout testified that he had no intention of shooting Jones. He stated that his only purpose in firing the shot was to shoot over Jones' head and frighten him into leaving the house. The single shot entered the front part of the left chest and lodged in the rear of the right chest. It tore the left pulmonary artery and transgressed the upper aspect of the left lung. Death followed within a matter of minutes.

The case was submitted to the jury on first and second degree murder and manslaughter. The manslaugh-

ter conviction carried a sentence of two years. We reverse on Point I, but because of a possible retrial we will enumerate and discuss seven of the points raised.

Point I. *The trial court erred in refusing to require the prosecuting attorney to produce the written statements of the defendant and Witness Tommy Ray Thomas.* When Stout was taken to the sheriff's office he made an oral statement to Sheriff Vickery, explaining his version of the incident in detail. Shortly thereafter the prosecuting attorney arrived and took a written statement. When Sheriff Vickery was testifying as to the oral statement made to him, counsel for appellant inquired if the written statement was the same as the oral statement. To that question the prosecutor replied that they were generally similar. At that point appellant's counsel asked that the written statement be introduced through the sheriff. The request was denied on the ground that its introduction was a matter for the prosecuting attorney to decide.

Later the same matter arose. Appellant was being cross-examined by the prosecuting attorney. He challenged the truth of appellant's contention that appellant received a report by telephone that Jones was still at the house, drunk and belligerent. The prosecutor asked: ''How does it happen in your [written] statement that there is no mention of it?'' At that point appellant's counsel objected to the prosecutor picking out parts of a statement and withholding the rest; he suggested that the proper procedure would be to introduce the statement. The court overruled the objection. The prosecutor continued to ask the witness questions concerning the contents of the written statement, the clear insinuation being that accused told the truth when he gave the statement but not so when he was testifying.

The prosecutor used the written statement as a tool to impress upon the jury his contention that inconsistencies existed between that statement and the testimony

of the accused. With the credibility of the witness being so placed in jeopardy, we think the request by the accused that the jury be permitted to evaluate the contents of the statement should have been granted. The prosecutor accused Stout of denying portions of his written statement. How could the jury determine the accuracy of that accusation unless they were permitted to examine the statement? By introducing the statement on appellant's motion the State would not necessarily be bound by its contents. It could also be introduced for the limited purpose of determining if any inconsistencies existed between its contents and Stout's testimony. Stout had in fact testified that the two were the same except for details. The prosecuting attorney's attempt to establish inconsistencies was in effect an effort to impress *portions* of the written statement in the minds of the jurors. In *Adkins* v. *Hershy,* 14 Ark. 442 (1854), the court said:

> "The admission must be taken as a whole, and if the plaintiff proves only a part, the defendant may call for the entire conversation on cross-examination. The rule is, not that the plaintiff is concluded by the entire admission, but that it is competent evidence for the defendant to go to the jury, who are the proper judges of its credibility, and may reject such portions if any, as appear to be inconsistent, improbable or rebutted by other circumstances in evidence."

It is true the State did not formally introduce parts of the written statement but the effect was the same. We therefore hold that the same rule should apply, namely, that the defendant should be permitted to prove other relevant portions. *Whitten* v. *State,* 222 Ark. 426, 261 S. W. 2d 1 (1953).

It was not error to permit the sheriff to testify as to the oral statements made to him by the accused. The written statement was taken by the prosecuting attorney

and not by the sheriff. Those were two different statements. *Finn* v. *State,* 127 Ark. 204, 191 S. W. 899 (1917).

Point II. *The court erred in refusing to suppress oral statements made by the defendant at his home and before he was advised of his constitutional rights.* Officer Hamlet, with whom Stout had previously conferred on the telephone, was the first officer to arrive after the shooting. He could see the deceased lying on the floor. He inquired of appellant as to the whereabouts of the weapon. Appellant's wife located it and brought it to the officer. Hamlet then inquired of the accused if that gun was used in the shooting; to which the latter replied in the affirmative. That was the sum total of their conversation.

Shortly thereafter the sheriff arrived. The only conversation between the sheriff and the accused was summarized by appellant: "He asked me what was going on and a few simple questions." At that point the sheriff told Stout he would have to go to town with him.

Appellant relies on *Miranda* v. *Arizona,* 384 U. S. 436 (1966), contending he was not given the required warnings prior to the two recited interviews. *Miranda* does not apply here. The police were responding to a call from the defendant and found a dead body. The officers' investigation had not reached an accusatory stage. *Miranda* warnings are required when the investigation reaches custodial interrogation of a suspect. The officers testified that immediately on reaching headquarters, and prior to that interrogation, defendant was fully advised of his rights.

Points III and VI. *It was error to refuse appellant's requested Instructions 1 and 2.* Both instructions embodied the theory of justifiable homicide by killing in self-defense. Stout's version of the cause for the killing was that he went in the house with the gun with the intention of scaring Jones from the home. Stout testified

that he meant simply to shoot over Jones "and kind of bluff him and shoo him on out of the house." He said he didn't intend to shoot Jones; he only wanted to frighten him. Stout asserted he never intentionally hurt anyone in his life.

*Justifiable* homicide embodies an *intent* to kill but under circumstances which render the act proper. ". . . excusable homicide is that which takes place under such circumstances that the party can not strictly be said to have committed the act willfully and intentionally, and whereby he is relieved from the penalty annexed to the commission of a felonious homicide." Warren on Homicide, V. 1, p. 616 (1938). Killing in necessary self-defense is our statutory definition of justifiable homicide. Ark. Stat. Ann. § 41-2231 (Repl. 1964).

Since Stout's defense was not based on a willful and intentional killing in self-defense, he was not entitled to the proffered stock instructions on self-defense. His assertion that the killing was unintentional is inconsistent with the concept of self-defense. *State* v. *Hale,* 371 S. W. 2d 249 (Mo. 1963). The *law* of self-defense is not involved, only the *right* of self-defense. *Curry* v. *State,* 97 S. E. 529 (Ga. 1918). Consonant with his right of self-defense, he would have been entitled to an instruction covering excusable homicide. A suggested instruction under very similar circumstances is summarized in *Curry, supra.* It involves the law of excusable homicide as applied to the evidence in the particular case, which narrows down to accidental homicide.

This court recognized the rule in the Curry case in *Jordan* v. *State,* 238 Ark. 398, 382 S. W. 2d 185 (1964). However, in that case the rule was held not applicable because it was Jordan's intention, according to his testimony, to shoot his assailant to save himself from being shot. Jordan was therefore entitled to an instruction on self-defense.

Point IV. *The court erred in permitting the widow*

*of the deceased to testify because she was permitted to remain in the courtroom, notwithstanding the Rule had been invoked, and because her name had not been furnished as a witness for the prosecution.* In chambers, and before the beginning of the trial, appellant's counsel reminded the court that Mrs. Jones had been called as a witness and he asked that she be excluded from the courtroom. His motion was overruled. When the trial shortly began, Mrs. Jones was called as the first witness. At that point, the only motion made by appellant's counsel was that Mrs. Jones not be permitted to testify because her name was not on the list of witnesses. Specifically, he did not renew his objection to her testifying on the ground that she should have been placed under the Rule. The failure to so object constituted waiver. Mrs. Jones was the first witness called and she was never recalled to the stand, so she heard no testimony from other witnesses. If the court committed error, it was clearly not prejudicial. *Williams* v. *State,* 237 Ark. 569, 375 S. W. 2d 375 (1964). Furthermore, she testified only to the age, height, and weight of the deceased, the number of children in the family, and the fact that the Joneses often visited in the Stout home. In other words, she testified to no facts really material to the case.

As to the second objection, the requirement of endorsing the witnesses has long been held merely directory, assuming it applies to prosecution by the filing of an information. It should also be said that the prosecutor advised appellant's counsel on the morning of the trial that he intended to call Mrs. Jones to testify to matters which were not material.

Point V. *The court erred in instructing the jury on first degree murder.* A discussion of this point is unnecessary because Stout cannot again be tried for a crime greater than manslaughter.

Point VII. *The prosecuting attorney was permitted to improperly cross-examine the defendant and*

*his witness, Ed Baker.* The prosecutor inquired of Stout concerning several alleged misdemeanors. On more than one occasion Stout denied having been convicted. Since those were collateral matters, each denial should have concluded that inquiry; however, the prosecutor would not accept the denial but would proceed to press the matter further. That practice should be avoided on retrial; nor should such questions be propounded in argumentative and accusatory form.

Point VIII. *The court erred in refusing to permit Witness Ed Baker to testify as to the past actions of Winfred Lee Jones when the latter was drinking.* Ed Baker was foreman at a plant where Jones was at one time employed. If permitted, he would have testified that Jones was discharged by Baker because he was intoxicated on the job, was "loud and belligerent, rude and very disrespectful." There was evidence to the effect that decedent was intoxicated when he was shot and that he was belligerent. Appellant contends that Jones' acts of belligerency at the time he was discharged would tend to show that drunkenness always brought on belligerency on the part of Jones. To establish such a pattern of conduct by a single prior act is too illogical to require comment.

Reversed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm the judgment of the lower court. I have a consuming curiosity about the content of appellant's written statement, but this is not a proper basis for reversal. In considering whether reversible error was committed we should consider the entire record in the case and the actions of appellant and his attorney in regard to this particular statement. Appellant first filed a motion to suppress, stating that it was a mere written summary of what he had told the police officers, without having

been advised of his constitutional rights. This motion was denied, but appellant's motion for new trial assigns this denial as error. When the sheriff took the witness stand, appellant objected to his relating an oral statement, contending that if the statement was taken down in writing, the writing would be the best evidence. It was then established that the oral statement to the sheriff had not been reduced to writing. The prosecuting attorney stated that, in general, the oral and written statements were the same. Appellant's abstract does not reveal any request for inspection of the written statement. On cross-examination appellant's attorney determined that the sheriff had possession of a copy of the written statement. He moved its introduction after the sheriff testified that only the first part of the written statement was made in his presence. This motion was denied. Appellant's attorney did not ask for permission to inspect the statement at that time and did not make any proffer for the record. The defendant, in testifying, stated that he was willing for the statement to be introduced. He also said that it was substantially the same as his testimony, except that his testimony was in more detail. On cross-examination, defendant stated that only the prosecuting attorney and his secretary were present when the written statement was made. Although the prosecuting attorney asked defendant how it happened that there was no mention of his wife's call to him to come home in his written statement, the defendant never answered the question and never was called upon to answer. After an objection by appellant's attorney, this question was never repeated. The statement was not offered by the prosecution to contradict defendant's testimony.

The sheriff was called by the state in rebuttal to contradict testimony of defendant's witness Thomas. On cross-examination he stated that he had in his possession the written statement of Tommy Ray Thomas and appellant. Appellant's counsel then specifically asked to see the statement of Thomas and asked its in-

troduction. No objection was offered to inspection of this statement by appellant's attorney. When an objection was made to introduction of the Thomas statement, appellant's counsel proceeded without a ruling by the court and inquired of the sheriff about the absence of a part of Thomas' testimony from this statement. He did not ask to be permitted to see the statement of appellant nor did he ask that it be introduced at this time. There is no' reason to believe that any objection would have been raised to examination of the statement by appellant's attorney.

If the statement was favorable to appellant, it was not admissible as it would have been a self-serving declaration and not contemporaneous with the statement made to the sheriff. *Butler* v. *State,* 34 Ark. 480. Self-serving statements cannot be offered in rebuttal of proof of incriminating statements. *Patterson* v. *State,* 179 Ark. 309, 15 S. W. 2d 389. Such statements are not rendered competent merely because they differ from statements testified to by other witnesses. *Reece* v. *State,* 125 Ark. 597, 189 S. W. 60.

If it were admissible to impeach the testimony of the officers as to the content of appellant's oral statement, then it could not be introduced through one who was not present when it was made. Appellant never at any time called either the prosecuting attorney or his secretary to testify as to this statement, as he might have done. Neither did he indicate that he desired to offer the written statement to impeach the testimony of the officers or lay the foundation to do so.

But the most fatal defect of all is that the statement was never proffered for the record. This being the case, we are not at liberty to consider its admissibility or possible prejudice in the refusal to admit. *Misenheimer* v. *State,* 73 Ark. 407, 84 S. W. 494; *Latourette* v. *State,* 91 Ark. 65, 120 S. W. 411; *Jones* v. *State,* 101 Ark. 439, 142 S. W. 838; *Baldwin* v. *State,* 119 Ark.

518, 178 S. W. 409; *Simmons* v. *State,* 124 Ark. 566, 187 S. W. 646; *Fowler* v. *State,* 130 Ark. 365, 197 S. W. 568; *Powell* v. *State,* 133 Ark. 477, 203 S. W. 25; *Lassiter* v. *State,* 137 Ark. 273, 208 S. W. 21.

I do not agree with the trial judge that the matter of introduction of the written statement lay wholly within the province of the prosecuting attorney. I agree that it is reversible error for the prosecuting attorney to withhold evidence favorable to a defendant. I do not agree that this rule requires him to introduce a defendant's self-serving statements, nor do I agree that we should act on the admissibility of evidence without knowing what that evidence is. We can only speculate as to the content of the statement. There simply is no evidence that anything favorable to the defendant was withheld. It is a novel idea to suggest that an attorney is required to offer his entire conversation with a witness in evidence because he asks the witness why some fact revealed in the witness' testimony was not disclosed in the conversation. The majority's holding that this statement was admissible regardless of its content is unique to say the least.