JOHN WEBER v. STATE OF ARKANSAS

5565                                                    466 S. W. 2d 257

Opinion delivered May 3, 1971

C. E. Blackburn, for appellant.

Ray Thornton, Attorney General; Garner L. Taylor, Jr., Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. John Weber, appellant herein, was charged with larceny of a truck and of a boat, with escape from the county jail, and with being an habitual criminal. The court directed a verdict of not guilty on the charge of stealing the truck, but the jury convicted Weber of Grand Larceny (stealing the boat); also, it convicted him of Escape, and thereafter found him guilty under the habitual criminal statute. He was sentenced to 26 years for grand larceny and five years for escape. From the judgment so entered, appellant brings an appeal from the grand larceny conviction. For reversal, three points are asserted, which we proceed to discuss.

It is first contended that the court erred in admitting incompetent, irrelevant, and immaterial testimony by certain witnesses. Weber, who was being held in the Cleburne County jail on a charge of second degree murder, escaped on the morning of June 12, 1970. A manhunt was organized and Weber was located and arrested on the afternoon of that date by two deputy sheriffs on a road near Greers Ferry Lake. Denny Douglas, who lives close to the Lakefront Lodge, testified that he arose on the morning of June 12, between daylight and sunup, and noticed a man at the boat dock starting a dark colored boat "looked green from where I was". He could not tell what type of clothing the man was wearing, nor could he describe the individual, other than that he was of average size. Actually, the witness knew no facts that connected Weber with the offense of stealing the boat, and his testimony deals more with the charge of stealing the truck, though the value of his evidence on that charge was negligible. It is true that the testimony was of no value to the state, but, that being true, we certainly cannot find any prejudice. No fact was testified to that could have possibly aided in the conviction, and if the testimony was inadmissible, it certainly has not been demonstrated that it was prejudicial. See *Stout* v. *State,* 244 Ark. 676, 426 S. W. 2d 800.

The same complaint is also made with reference to the testimony of State Trooper Noel Baldridge, but we certainly cannot agree with appellant that this testimony

was irrelevant, incompetent, or immaterial. Baldridge testified that he learned that a boat and motor were stolen, was given a description of them and given a description of Weber's height, weight and the color of his hair; also, that the escapee was wearing brown pants and a levi jumper. The officer stated that as he was crossing the Edgemont Bridge, he observed a man in a green fishing boat, going under the bridge. He said the occupant was a male with dark curly hair and was wearing a levi jacket; that he hollered and waved at the occupant of the boat, trying to get the latter to stop; that the man cut back behind him, turning his head in the other direction and went on under the bridge, and proceeded south.

"After I hollered at him from the bridge and he wouldn't look toward me, I radioed to the command post at that time and told them that a boat of the description that we had and a man of the description that we had in the boat had gone under the bridge and they advised me to pursue this boat. I drove my unit to the, I believe it's the Baker Boat Dock and got in a boat with a couple of fishermen and we gave pursuit to this green fishing boat."

Baldridge stated that the closest they were able to get to the occupant of the green boat was from 100 to 150 yards, and that the other boat simply "outran us". He said that four or five miles up the "Middle Fork" of Red River, the boat was found on the right bank with no one around it, and the gas tank empty. The officer took the number of the boat, and Phillip Davidson, operator and owner of the Lakefront Lodge and Restaurant, stated that the boat belonged to him, and had been taken from a boat dock. The only evidence that might have been considered objectionable was the statement by the officer that the boat found on the bank was the same boat that he had been chasing; however, though at the conclusion of the testimony by the witness, defense counsel moved that all of his testimony be stricken, there was no objection at all made to the answer referred to. We have already said that Baldridge's testimony, in the main, was pertinent; accordingly the motion to strike was properly denied, and there being no objection to the specific ques-

tion to the officer, nor to the answer made, there can be no merit to any contention of prejudice. The evidence of Baldridge was, of course, circumstantial, but it tied in with other circumstances that connected Weber with the crime. For instance, Ben Hubby testified that he saw appellant on the lake by Cove Creek,[1] Weber being out of gas, and he (Hubby) towed him in. They looked for gas, finally found some at a store, went back to the boat, and Weber started the motor and left. The witness identified Weber, whom he did not know before that occurrence, and described the green boat in which he was traveling. This occurred between 9:00 and 10:00 o'clock in the morning.

Gerald Melton, who was fishing with his son and another person, saw Weber in the boat, and subsequently saw him again when appellant came to the fishing camp endeavoring to find gasoline. Melton described the boat and motor, and identified Weber as the operator. Deputy Sheriff Walt Barden testified that he, together with Deputy Sheriff Delbert Hooten, arrested Weber about "two miles up from Middle Fork" on an old logging road. Dogs were used and were apparently taken to the abandoned boat where they struck a trail. Weber was found standing in the road about an hour before dark. The testimony was sufficient to sustain the conviction.

It is next asserted that the court erred in failing to instruct the jury on the lesser offense of joy-riding or trespass as requested by the defendant. This point is tied in with point three which asserts that the state failed to sustain its burden of proof of the crime of grand larceny. As far as criminal trespass is concerned, the record does not reveal that any request was made for an instruction on this offense, nor was there any objection made to the court's not giving such an instruction. But that is actually immaterial for our statutes on both criminal trespass and joy-riding do not include a boat. The criminal trespass statute, Ark. Stat. Ann. § 41-3919 (Repl. 1964) provides a fine for one, who without the consent of the owner,

---

[1]This point would have been reached before the location where the boat was found abandoned.

takes possession "of any horse, mule, automobile, bicycle, wagon, buggy, motorcycle and/or airplane[2] for the purpose of riding or driving the same * * * *". It will be noticed that the word "boat" is not included. It is so firmly established as to need no citation of authority that criminal statutes are strictly construed, and nothing can be added or taken away from the precise or express language of the Act.

We have two "joy-riding" statutes. Both are found in Title 75, Motor Vehicles, Chapter 1, §§ 75-101 through 75-194 (Repl. 1957). The first is § 75-170:

"75-170. Unlawful taking of a vehicle.—Any person who drives a vehicle, not his own, without the consent of the owner thereof and with intent temporarily to deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor. The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of such vehicle by the same or a different person. Any person who assists in, or is a party or accessory to or an accomplice in any such unauthorized taking or driving, is guilty of a misdemeanor."

This section is a part of Act 142 of 1949. In this Act the word "Vehicle" is defined, § 75-102 (a), as:

"Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks."

Certainly a boat does not come within this definition of vehicle. Immediately following the definition of "Vehicle" is a definition of "Motor Vehicle", also a part of Act 142, § 75-102 (b), which reads as follows:

---

[2]All of these items except horse and mule were added to the statute by an amendment in 1943.

"Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

Of course, the definition of a motor vehicle is simply a definition of a class of "vehicle", i. e., it refers to those vehicles defined in (a) which are motorized.

It is apparent that these sections have no reference to boats. The other joy-riding statute is § 75-194 and is a part of Act 134 passed in 1911. It provides as follows:

"No chauffeur or other person shall drive or operate any motor vehicle upon any street or highway in this State in the absence of the owner of such motor vehicle without said owner's consent,[3] * * * Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction shall be fined a sum not exceeding two hundred dollars [$200.00] or imprisonment in the county jail for a period not exceeding six [6] months, or both, at the discretion of the court."

Obviously, this statute has no reference to a boat.

Since these statutes do not in anywise deal with boats, there can be no merit in appellant's contention.

The judgment is affirmed.

---

[3]The deleted portions of the statute refer to provisions that are not pertinent to this appeal.